**Ralph COLEMAN, et al., Plaintiffs,**

v.

**Pete WILSON, etc., et al., Defendants.**

**Civ. S–90–520 LKK.**

United States District Court,
E.D. California.

July 12, 1996.

Donald Specter, Prison Law Office, General Delivery, San Quentin, CA, Michael W. Bien, Rosen, Bien and Asaro, San Francisco, CA, for plaintiffs.

Bruce Slavin, Deputy Attorney General, San Francisco, CA, for defendants.

### ORDER

KARLTON, Chief Judge Emeritus.

This court previously entered an order appointing a special master in this litigation concerning the conditions of confinement experienced by a class of California prisoners. Below, the court determines the effect of the Prison Litigation Reform Act on the compensation ordered paid the special master.

### I.

### HISTORY OF THE LITIGATION

Plaintiffs, a class composed of mentally ill inmates in California's prisons, brought suit under 42 U.S.C. § 1983 alleging that they were being deprived of adequate medical care in violation of the Eighth Amendment to the Constitution of the United States. The matter was referred to a magistrate judge of

this court who, after trial, found for plaintiffs and recommended various remedial orders. The defendants filed objections and, after extensive briefing and argument, this court on September 13, 1995 entered an order which essentially adopted the magistrate judge's findings and noted that his recommendations "were to be implemented by subsequent order of the court." *Coleman v. Wilson*, 912 F.Supp. 1282, 1324 (E.D.Cal. 1995).

In the same order the court, concluding that "[m]onitoring compliance with the injunctive relief ordered" would be a "formidable task," and thus exceptional circumstances existed, *see* Fed.R.Civ.P. 53(b), determined that appointment of a special master was appropriate. *Coleman*, 912 F.Supp. at 1324. The special master's duties were to be "twofold: to provide expert advice to the defendants to aid in ensuring that their decisions regarding the provision of mental health care to class members conform to the requirements of the federal constitution, and to advise the court concerning issues relevant to assessing defendants' compliance with their Constitutional obligations." *Id.* at n. 63. The matter was then referred back to the magistrate judge for recommendations concerning who should be appointed as special master.

After consulting with the parties the magistrate judge recommended an experienced prison conditions special master, Michael Keating, Jr. On December 11, 1995, by order of this court, Mr. Keating was appointed. The reference to the special master directed the implementation of the remedial orders adopted by the court and the defendants were ordered to pay his compensation and

expenses as a cost of suit. *See* Fed.R.Civ.P. 53(a).[1] Since then, the special master has undertaken the discharge of his duties, and with the approval of the court, hired staff and various experts to assist him. Subsequent to the adoption of the legislation in issue here, the special master, uncertain as to the rate of his own compensation and whether his staff and retained experts would be compensated at all, ceased work pending this court's further direction.

## II.

### THE PLRA AND ITS EFFECT

On April 26, 1996, the President signed into law an omnibus appropriations measure, which included amendments to 18 U.S.C. § 3626. These amendments, known as the Prison Litigation Reform Act ("PLRA"), establish detailed rules for the administration of prison litigation, including limiting the compensation special masters may receive and directing that their compensation be paid by the federal judiciary. *See* 18 U.S.C. § 3626.[2] Because the Act may apply to this court's previous order, because it may have a significant effect on the special master and his ability to perform his duties, and because the special master is unable to proceed without clarification of his compensation, the court requested, and the parties have submitted, briefing on the issue of the effect of the PLRA's compensation clause.[3]

The statute provides that § 3626, as amended, "shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of enactment of this title." § 802(b) of Title VIII of the Appropriations

---

1. Compensation was fixed at one hundred fifty dollars per hour except for travel time which was allowed at seventy five dollars an hour.

2. Relative to compensation, the PLRA provides:
   The compensation to be allowed to a special master under this section shall be based on an hourly rate established under section 3006A for payment of court-appointed counsel, plus costs reasonably incurred by the special master. Such compensation and costs shall be paid with funds appropriate to the Judiciary.
   18 U.S.C. § 3626(f)(4).
   By virtue of the Act, compensation for special masters appointed in this district will be limited to seventy five dollars per hour.

3. Subsequent to the hearing, the court requested input from the special master concerning the effects of the application of the PLRA on his ability to perform his duties. Mr. Keating submitted an affidavit which explained, *inter alia,* his overhead, the background and compensation for his staff, and expressing his concern that "the proposed fee reduction demeans my experience, reputation and ability and the dignity and value of the office of the special master," he avers that "I will not continue to serve in the role at that rate." Declaration of J. Michael Keating Jr., filed June 24, 1996, at 7.

for, *inter alia*, the Judiciary. The statute then defines prospective relief as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). In turn, 18 U.S.C. § 3626(g)(9) defines the term relief as "all relief in any form that may be granted or approved by the court...." Thus, to the extent that it may constitutionally do so, § 3626 applies to all nonmonetary relief ordered in the matter at bar.[4] Under these circumstances, the first question that is tendered is whether the appointment of Mr. Keating is "relief" for purposes of § 3626.[5]

Plaintiffs argue that the appointment of a master is a means of facilitating relief, rather than relief itself, and accordingly the statute does not effect compensation of a previously appointed master.[6] The matter is one of statutory construction. Accordingly, I first turn to the statutory definition. *See Gustafson v. Alloyd Co.,* — U.S. —, —, 115 S.Ct. 1061, 1074, 131 L.Ed.2d 1, 21 (1995) (Thomas, J. dissenting *citing FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)) (Where the statute defines a term that definition, rather than common meaning, governs).

Unfortunately, the statutory definition of "relief" violates the first rule of a meaningful definition, which is that "[t]he term being defined or a synonym of it should not appear in the definition." *Harris v. Tomczak,* 94 F.R.D. 687, 698 n. 17 (E.D.Cal. 1982) (quoting Daniel S. Robinson, *The Principles of Reasoning: Introduction of Logic and Scientific Method,* (3rd Ed., 1947) at p. 58.) The reason for this rule is plainly demonstrated by the instant case. The statutory definition sheds no light on the disputed term's meaning since "relief" is in essence defined as all relief. Thus, while the definition teaches that it encompasses all instances of the term, it does not tell us what demarks and distinguishes those instances from others. Accordingly, the court must look elsewhere. Doing so leads to the conclusion that compensation of a special master is not "relief" within the meaning of the statute.

---

4. The constitutionality of this statute is under question in a number of courts across the country. One district court has already entered an order declaring the automatic stay provision of the PLRA as unconstitutional. *See Hadix v. Johnson,* 933 F.Supp. 1362 (W.D.Mich.1996).

5. At least two other questions are potentially also tendered by the statute's locution: Are the orders concerning a master's renumeration "compensatory monetary damages," and does the compensation provision apply if Mr. Keating was not appointed under this section? Both questions are less straight forward then they first appear.

Thus the statute provides for "[t]he compensation to be allowed to a special master under this section...." § 3626(f)(4). If this phrase is understood to mean masters appointed under the amended § 3626, the subsection does not apply to Mr. Keating because he was appointed before the section existed. On the other hand, if it was intended that (f)(4) apply to any master whether appointed "before, on or after" adoption of the statute, then under the statute Mr. Keating's compensation has been reduced from $150 per hour to $75 per hour, despite his having agreed to accept the position based on the higher rate. A proper resolution of this issue may turn on whether Congress has specified the retroactive effect of (f)(4), or whether there is an ambiguity; *See Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

Moreover, given that Mr. Keating has undertaken the discharge of his duties pursuant to the court's previous order, and changed his position in reliance thereon, there is a question as whether as to him there is a final order relative to compensation which Congress may not now alter. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. —, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

Given the disposition of the question of the meaning of "relief" in the text, I need not address these difficult questions which implicate issues of a constitutional dimension.

6. Remarkably, defendants do not respond to the argument, apparently taking the position that if the statute applies at all, it self-evidently applies to the future compensation due the master. In sum, their position appears to be that because the statute specifies application to relief granted prior to the effective date of the statute, and the overall purpose of the statute is regulation of prison conditions litigation, the term "relief" as used in the statute should include the compensation of previously appointed masters. Such a generic approach is inappropriate. While it is true that intent is gleaned from reading the statute as a whole, *Conroy v. Aniskoff,* 507 U.S. 511, 514, 113 S.Ct. 1562, 1565, 123 L.Ed.2d 229, 236 (1993), Congress expresses its intent through the language it uses, and it is analysis of that language which determines its intent. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 252, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says").

■ Because "relief" in this context addresses a question concerning the orders of a court, it is appropriate to look to whether the term has a specialized legal meaning. *See Youngberg v. The Bekins Co.*, 930 F.Supp. 1396, 1401 n. 7 (E.D.Cal.1996) (quoting *Evans v. United States*, 504 U.S. 255, 259, 112 S.Ct. 1881, 1885, 119 L.Ed.2d 57 (1992)). The standard legal dictionary suggests as a definition of relief in this context "... a general designation of the assistance, redress, or benefit which a complainant seeks at the hands of a court, particularly in equity. It may be thus used of such remedies as specific performance, injunction, or the reformation of recision of contracts." *Black's Law Dictionary*, 5th Ed., p. 1161. This definition, focusing on the ultimate legal form of remedy rather than the means of achieving the remedy, appears to favor plaintiffs' position. Moreover, to the extent that the definition points the court to the plaintiffs' requested remedy, i.e. "assistance, redress, or benefit which a complainant seeks," a review of the amended complaint indicates that the appointment of a special master was not sought by the plaintiffs.

An interpretation recognizing a distinction between the relief ordered and the appointment of a special master is supported by the court's order adopting the magistrate judge's findings and recommendations in this case. There, the court distinguished between the remedies required to cure the constitutional deficiencies, *Coleman v. Wilson*, 912 F.Supp. at 1323, and the appointment of a special master. *Id.* at 1324 (noting the need to appoint a master "to monitor compliance with the court ordered injunctive relief").

All the above leads the court to conclude that, although § 3626 may apply to "future prospective relief," that term does not apply to the compensation of a previously appointed special master.[7] The court concludes that the amendments to § 3626 effectuated by the PLRA are inapplicable to the court's appointment of Michael Keating, Jr. in the matter at bar.

Accordingly, Mr. Keating is DIRECTED to resume his duties and the state is ORDERED to continue to compensate him under the court's original order.[8]

IT IS SO ORDERED.

---

7. While the court believes that the issue is resolved by virtue of the meaning of the word "relief," viewed as a term of art, even if there is an ambiguity, the resolution of the question adopted in the text would be appropriate because it avoids the constitutional question noted in n. 5 *supra,* which might otherwise have to be addressed. *See St. Martin Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *DeBartolo Corp. v. Florida Gulf Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988).

The court also believes that since construction can be resolved as a matter of plain legal meaning, it need not examine the legislative history. If called upon to do so, the court notes that the history at least suggests that Congress, having been warned of the possible constitutional issue, revised the statute's language from its originally

introduced language to its present form. *See* S. 400, 104th Cong., 1st Sess. (February 14, 1995); S. 866 104th Cong., 1st Sess. (May 25, 1995); S. 1279, 104th Cong., 1st Sess. (September 27, 1995); 141 Cong. Rec. § 14408–10, § 14418 (September 27, 1995); 1995 WL 496910 (F.D.C.H.) at 13.

8. Mr. Keating has also expressed concern that 18 U.S.C. § 3626(f)(6)(B), restricting ex parte communication by the special master "negates the traditional mediating role [of] masters". The court had read the section as relating solely to formal factfinding and thus having no effect on the master's mediation role. Given the master's reading, the court now directs the defendants, if they share the master's view, to bring on a motion to modify the Order of Reference in this regard within fifteen (15) days. If defendants fail to do so, the issue will be deemed waived.