**Ollie CARRUTHERS, et.al., Plaintiffs,**

v.

**Ken JENNE, et.al., Defendants.**

**No. 76–6086–CIV–WMH.**

United States District Court,
S.D. Florida.

June 24, 2002.

Christopher C. Cloney, Christopher Cloney, P.A., Fort Lauderdale, FL, for Plaintiffs.

John Tiedeberg, Davie, FL, Bruce Jolly, Purdy, Jolly & Guiffreda, P.A., Fort Lauderdale, FL, Hollie Hawn, Broward County Legal Dept., Fort Lauderdale, FL, Elijah Williams, Legal Dept. BSO, Fort Lauderdale, FL, Professor Howard Messing (Special Master), Fort Lauderdale, FL, for Defendants.

## ORDER GRANTING MOTION FOR PAYMENT OF ATTORNEY FEES

HOEVELER, District Judge.

THIS CAUSE comes before the Court on the Plaintiffs' Motion For Payment of Attorney Fees And Request For Expedited Procedure, filed February 15, 2002. In deciding this Motion, the Court has also considered the Defendants' Notification of Reliance on Automatic Stay Provision of the PLRA or Disallowance of Continued Monitoring, filed April 15, 2002. In this Order, the Court holds that the automatic stay provision of the PLRA applies only to prospective relief within a consent decree and not the consent decree itself. Additionally, the Court holds that attorney fees and monitoring costs are not "prospective relief" under the PLRA.

### BACKGROUND

On July, 1994, the Parties in this matter entered into a consent decree, which this Court later ratified. *See* Order dated January 31, 1995. The consent decree provided for broad prospective relief with respect to the conditions of confinement within the Broward County jail system. Additionally, the consent decree provided for monthly payment of the Plaintiffs' attorney fees, and compliance monitoring, which would be completed by the Plaintiffs' counsel. *See* Stip. for Entry of Cons.Dec. ¶¶ 15–22.

In August, 1996, subsequent to the enactment of the Prison Litigation Reform Act ("PLRA"), the Defendants filed a Joint Motion to Terminate/Dissolve Consent Decree ("Motion to Terminate"). This Motion remains pending. On August 2, 2001, the Court appointed an expert, Steve Martin, to examine the conditions of the Broward County jails and prepare a report as to their constitutionality. After such report has been prepared, the Court will

conduct an evidentiary hearing, after which it intends to rule on the Defendants' Motion to Terminate.

The Defendants, however, argue that until the Court rules on their Motion to Terminate, all prospective relief is automatically stayed by operation of the PLRA. Thus, the Defendants have stopped paying the Plaintiffs' counsel attorney and monitoring fees. The Plaintiffs' counsel has brought this motion to recover such fees.

## ANALYSIS

The PLRA limits the Court's power to continue "certain forward looking relief" in civil actions challenging conditions in prisons. *See Benjamin v. Jacobson*, 172 F.3d 144, 154–55 (2nd Cir.1999). The PLRA teaches that a court shall not approve any prospective relief unless the court finds that such relief is (1) narrowly drawn; (2) extends no further than necessary to correct the violation of the involved federal right; and (3) is the least intrusive means necessary to correct the violation of that federal right. *See* 18 U.S.C. § 3626(a)(1). The PLRA provides that where the Order granting prospective relief does not specify that these three conditions are met, the prospective relief shall be immediately terminated upon motion by either party. *See* 18 U.S.C. § 3626(b)(2). In this case, the Order granting the prospective relief did not specify that these conditions were met because it predated the PLRA. Thus, in August of 1996, the Defendants filed a motion to terminate on which the Court has not yet ruled.

The PLRA provides that if the Court has not ruled on a motion to terminate the consent decree 30 days, or up to 90 days for good cause, from the day of its filing, all prospective relief will be automatically stayed until a ruling on the motion to

terminate has been entered. *See* 18 § U.S.C. 3626(e)(2) and (2)(A)(i). There is no question that the Court has not ruled on the Motion within 90 days, and thus all prospective relief is clearly stayed under the PLRA.

The two questions presented to this Court are (1) whether attorney fees and monitoring fees are considered "prospective relief" for purposes of the PLRA; and if not (2) is the entire consent decree stayed by operation of the PLRA, whether or not certain provisions relate to "prospective relief"? The Court will address these questions in reverse order.

## I. Is the entire consent decree stayed by operation of the PLRA?

■ The first question this Court must address is whether the entire consent decree is stayed by operation of the automatic stay provision of the PLRA. In other words, is it only prospective relief that is stayed by the PLRA or everything which flows from consent decree? This question is essential to the Court's analysis because if the entire consent decree is stayed, it is irrelevant whether or not attorney fees and monitoring are considered to be prospective relief.

This is not the first court to address the issue of whether the PLRA's termination provision stays the entire consent decree. In fact, the circuits have split on the issue. The First and Second Circuits have held that the automatic stay provision applies to the entire consent decree. *See Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649 (1st Cir.1997); *Benjamin*, 172 F.3d at 158. The Ninth Circuit, and Judge Calabresi of the Second Circuit, have held the opposite, that the automatic stay applies only to prospective relief within the consent decree. *See Gilmore v. People of the State of California*, 220 F.3d 987, 1000 (9th Cir. 2000); *Benjamin*, 172 F.3d at 172–74 (Calabresi, C.J., concurring).[1] The dispute be-

1. The other cases cited in Defendants' untime-

ly filed reply assume that the termination

tween the circuits seems to center around both the statutory language and the legislative history.

The statutory language dispute focuses on the meaning of the statutory language of 18 U.S.C. § 3626(g), which defines "prospective relief" § (g)(7), "relief" § (g)(9), and "consent decree" § (g)(1). The Second Circuit argued that the PLRA requires termination of the entire consent decree because "prospective relief" is defined under the PLRA as including consent decrees. Specifically, the Second Circuit, read that "prospective relief" was defined as "all relief other than compensatory monetary damages," and that "relief" was defined as "all relief in any form that may be granted or approved by the court *and includes consent decrees ...*" 18 U.S.C. § 3626(g)(7) & (g)(9) (emphasis added). Thus, the Second Circuit concluded that it was clear from the statutory language that the termination provision applied to the entire consent decree.

However, the First and Second Circuit, along with virtually all the courts to have addressed the issue, noted that the definition of "relief" under the PLRA is inconsistent with the typical use of the word "relief" and "consent decree." *See Inmates of Suffolk County Jail,* 129 F.3d at 654. A consent decree is not generally considered relief. A consent decree is normally considered "a judgment that engenders relief" and not the relief itself. *See Id.* To be consistent with common legal usage, the definition of 'relief' should have included all relief '*contained within* a consent decree.' Thus, although the First and Second Circuits choose to take a literal interpretation of the language, they recognized that the interpretation was awkward and unnatural. *See* discussion *infra.*

provision relates to the entire consent decree without discussion of the issue and therefore are not particularly helpful to this Court. *See Dougan v. Singletary,* 129 F.3d 1424, 1425–26

Moreover, the First and Second Circuit did not consider the statutory definition of "consent decree." *See Gilmore,* 220 F.3d at 1001. The PLRA defines a consent decree as "any *relief* entered by the court that is based in whole or in part upon the consent or acquiescence of the parties." 18 U.S.C. § 3626(g)(1) (emphasis added). The Ninth Circuit noted that "a consent decree is not merely a form of relief," but the PLRA "defines a consent decree exclusively in terms of the relief it provides." *See Gilmore,* 220 F.3d at 1001. In other words, by defining a consent decree solely in terms of the relief it provides, the statute refers not to the whole consent decree but merely to the relief engendered therein. Thus, the Ninth Circuit correctly concluded that "the termination provisions do not require the termination of consent decrees or any other final judgments of Article III courts. The provisions apply exclusively to prospective relief." *Id.* The Ninth Circuit argued that its construction was preferable because it flowed more naturally from the statutory language and because it avoided constitutional questions.

The legislative history dispute centers around statements in the Congressional Record which suggest that Congress wanted to truncate the federal judiciary's involvement in prison administration and a specific House Conference Report which states "[p]rior consent decrees are made terminable upon the motion of either party, and can be continued only if the court finds that imposed relief is necessary to correct the violation of the federal right." *See Inmates of Suffolk County Jail,* 129 F.3d at 655 (citing H.R. Conf. Rep. No. 104–378 at 166 (1995)). However, the fact that Congress had a general goal of truncating the federal judiciary's involvement

(11th Cir.1997); *Gavin v. Branstad,* 122 F.3d 1081, 1084–87 (8th Cir.1997); *Plyler v. Moore,* 100 F.3d 365, 369–71 (4th Cir.1996).

in prison administration does nothing to answer the specific question addressed by this Court today. Additionally, the quoted House Report actually supports the position of the Ninth Circuit, because the consent decree is discussed solely in terms of the relief imposed. Judge Calabresi rightly held that "there is nothing in the legislative history that in any way suggests that Congress cared a jot or tittle about whether *relief* under the decrees was to be precluded as a result of court adherence to the PLRA, or whether the prior court judgments that is, the *decrees themselves* were to be terminated directly by congressional fiat." *Benjamin*, 172 F.3d at 174 (Calabresi, C.J., concurring) (emphasis in original). For these reasons, the Court does not find the legislative history to be a useful tool in interpreting this statute.

This Court is in agreement with the Ninth Circuit and Judge Calabresi that the definition of "consent decree," and the awkwardness of the alternative interpretation suggest that the PLRA's terminations provisions only relate to prospective relief engendered within a consent decree. This Court, however, has two additional independent reasons for holding that the PLRA does not automatically stay the consent decree itself, but only the prospective relief ordered therein.

As discussed *supra*, virtually every court which has opined on the issue admits that there is an ambiguity to the relevant language of the PLRA. "The PLRA's equation of "consent decree" and "relief" contradicts conventional understandings and creates a situation in which a strict, language-based construction of the PLRA requires that commonplace legal terms be used in curious ways." *Inmates of Suffolk County Jail*, 129 F.3d at 654–55; *Benjamin*, 172 F.3d at 156 (calling the statutory language "awkward" and "not a natural characterization" of the terms "consent decree" and "relief"); *Gilmore*, 220 F.3d at

1001 (finding that the language of the statute "deviates from common usage.")

There is a cannon of statutory construction which states that courts should not interpret a statute as displacing courts' traditional equitable authority to preserve the status quo pending resolution on the merits "absent the clearest command" or an "inescapable inference" to the contrary. *See Miller v. French*, 530 U.S. 327, 327, 120 S.Ct. 2246, 2255, 147 L.Ed.2d 326 (2000); *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). Under the First and Second Circuit's interpretation of the PLRA, Congress has more substantially displaced the courts' traditional equitable authority to preserve the status quo, because under such interpretation, the PLRA automatically stays or terminates, not only prospective relief, but anything else in a consent decree, including provisions on monitoring and attorney fees. Thus, this cannon of statutory interpretation suggests that the Court adopt the more limited construction of the PLRA.

In *Miller*, the Court did not end up applying this cannon of statutory construction because it found that Congress' intent was "unmistakable." In *Miller*, however, the parties did not argue that the language being interpreted ("*shall* operate as a stay") was ambiguous in and of itself, but only that the language did not make sense in light of another provision of the PLRA. *See Miller*, 530 U.S. at 338, 120 S.Ct. at 2254. The Court, however, found that the language was not inconsistent with the rest of the PLRA. In the present case, courts have almost universally found that the statutory definition of "relief" to be ambiguous in and of itself and courts disagree as to the meaning of the definition. *See e.g. Benjamin*, 172 F.3d at 172 (Cala-

bresi, C.J., concurring) (the majority "concedes that such a reading, albeit literal, is not natural.")

To the extent that this Court's and the Ninth Circuit's interpretation of the PLRA is not the correct interpretation, Congress' intended meaning is far from clear or unmistakable. In that case, it is appropriate to interpret the PLRA in a way which least displaces courts' traditional equitable authority to preserve the status quo pending resolution on the merits. Therefore, we interpret the termination provision of the PLRA to terminate the prospective relief granted by a consent decree, and not the consent decree itself.

Second, all of the circuits addressing the issue have considered it in the context of the "termination provision" of the PLRA, not the "automatic stay provision." There is a practical difference, however, between these two provisions. As discussed *supra*, an automatic stay is only applied where the court has not yet determined whether to grant a motion to terminate the decree. Frequently, this will be because the court is gathering facts to assess the need, narrowness and intrusiveness of the granted prospective relief. This might be done through a court appointed expert, evidentiary hearing, or both, as in this case.

During this interval, the plaintiffs will require attorney fees to defend against the motion, and will most likely require monitoring to provide the factual basis for their defense. In any case, monitoring may be required to help the Court decide whether the prospective relief is necessary and narrowly tailored. A special master may also be helpful in deciding the motion, particularly if he has already been working on the case for some time. On the other hand, halting prospective relief during this interval may actually help the Court to determine whether such relief is still necessary [2]

or whether the same goals could be achieved through a more narrow and less intrusive approach. Thus, in the case of an automatic stay, there are practical reasons to treat prospective relief differently from attorney fees, monitoring fees or a special master. In contrast, once a court has granted a motion to terminate, thereby indicating that the relief engendered in a consent decree is not necessary or not narrowly tailored, there is less of a need for such measures.

Thus, the present case is distinguishable from the First and Second Circuit cases. The Court believes that Congress and these other courts may have interpreted the PLRA differently in the context of an automatic stay, because of the different concerns which arise. Therefore, for this reason, and all of the reasons discussed *supra*, the Court finds that automatic stay provision of the PLRA stays all prospective relief in the consent decree but not the decree itself.

## II. Are attorney fees and monitoring fees are considered "prospective relief" for purposes of the PLRA?

If only "prospective relief" is stayed under the PLRA, the next question the Court must answer is whether attorney fees and monitoring constitutes prospective relief for purposes of the PLRA.

### A. Attorney Fees

█ There are two reasons why attorney fees cannot be considered "prospective relief" under the PLRA. For starters, the language of the statute makes it clear that attorneys fees are not prospective relief. First, the issue of attorney fees under the PLRA is discussed in an entirely different statute. *See* 42 U.S.C. § 1997e(d). Moreover, in this entirely different statute, at-

2. If the ground collapses when the prospective relief is stayed, it was necessary.

torney fees are distinguished from relief. The statute specifically states that the plaintiff must show that "the amount of the [attorney] fee is proportionately *related to the court ordered relief* for the violation" and "the [attorney] fee was directly and reasonably incurred *in enforcing the relief.*" 42 U.S.C. § 1997e(d)(1)(B) (emphasis added). This language makes it clear that the attorney fee is not considered to be the relief, itself.[3]

Second, the courts have distinguished the "ultimate form of the remedy" which is considered the "relief" and the means of obtaining the relief. *See Benjamin v. Fraser*, 156 F.Supp.2d 333, 342–43 (S.D.N.Y. 2001) (monitoring is not relief); *Coleman v. Wilson*, 933 F.Supp. 954, 957 (E.D.Cal. 1996) (appointment of a special master is not relief); *Madrid v. Gomez*, 940 F.Supp. 247 (N.D.Cal.1996) (same). The Court believes that attorney fees are more properly characterized as the means of obtaining the relief rather than the relief itself. The Plaintiffs who are seeking relief in the case care not whether their attorneys are paid only that their conditions improve. Thus, for these two reasons, the Court finds that attorney fees are not 'relief' for purposes of the PLRA.

**B. Monitoring**

■ Similarly, there are two reasons why monitoring cannot be considered "prospective relief" under the PLRA. First, as discussed *supra*, courts have treated the

means of obtaining relief differently than the relief itself. Clearly monitoring is not an "ultimate remedy" and only aids the prisoners in obtaining relief. At least one Court has specifically held that monitoring is not relief for purposes of the PLRA. "Monitoring itself, independent of the conditions to be monitored, cannot be relief. Monitoring merely informs the court and the parties where the defendants are in the process of providing the ordered relief. To find otherwise would conflate relief with the means to guarantee its provision." *Benjamin v. Fraser*, 156 F.Supp.2d at 342.[4]

Second, where it is the plaintiffs' counsel who is doing the monitoring, as in this case, it is difficult to distinguish 'monitoring' from other 'attorney fees.' In this type of prison litigation, the prisoners are the clients of the plaintiffs' counsel. Thus, in this situation, the monitoring fees really represent an attorney billing for the time he spent taking client phone calls. Thus, in this case, because monitoring fees are essentially attorney fees, they are distinguished from 'relief' under the PLRA by 42 U.S.C. § 1997e(d). *See* discussion *supra*. Moreover, because monitoring fees are essentially attorney fees in this case, they are subject to the same limitations of the PLRA, discussed *infra*. Thus, the Court finds that both attorney fees and monitoring are not 'relief' for purposes of

---

**3.** The Courts have made it clear that the definition of 'relief' is the same for purposes of 42 U.S.C. § 1997e(d) and 18 U.S.C. § 3626(b)(2). *See Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir.2001).

**4.** In its reply, the Defendant makes much of the fact that the Court in *Fraser* limited the access of the plaintiff's counsel to the prison. However, in *Fraser* it was not the plaintiff's counsel that was assigned the job of monitoring by the consent decree but instead the OCC, an independent office. Here the right

of the plaintiff's counsel to monitor was clearly granted in the consent decree. It can not be assumed that the *Fraser* Court would have so limited the counsel's access had counsel been assigned the task of monitoring by the consent decree. Moreover, the plaintiffs in *Fraser* did not contest the Court's decision to limit its access. Therefore the *Fraser* Court never had to analyze whether the cases relating to special masters applied to the issue of plaintiff's counsel's access and provided no meaningful discussion on the relevant legal issues.

the PLRA, and neither is automatically stayed by operation of the PLRA.

### III. Limitation on fees

Although the attorney and monitoring fees are not automatically stayed by the PLRA, the fees which the Plaintiffs can collect are limited by 42 U.S.C. § 1997e and 42 U.S.C. § 1988(b). Under these sections, the plaintiffs' attorney's hourly rate is capped and fees must be directly and *reasonably* incurred in enforcing the relief ordered for the violation. *See* § 1997e(d)(B)(2) (emphasis added); 42 U.S.C. § 1988(b); *Association for Retarded Citizens of North Dakota v. Schafer*, 83 F.3d 1008, 1011 (8th Cir.1996). The Court expresses no opinion as to the reasonableness of the Plaintiffs' fees as the Court has been provided no information that would aid in resolving this issue. Thus, the Court will refer this matter to Special Master, Professor Messing, who shall hold a hearing if necessary, and prepare a Report & Recommendation to this Court, regarding what fees are reasonable in light of this Order and the relevant limitations of the PLRA.

Therefore, having been advised in the premises it is hereby ORDERED AND ADJUDGED that the Plaintiffs are entitled to continued attorney and monitoring fees, to the extent that such fees meet the reasonableness requirements of the PLRA, and this matter shall be referred to the Special Master to prepare a Report & Recommendation on the reasonableness of such fees, in a manner consistent with this opinion.