741 A.2d 186

**SCHOOL DISTRICT OF the CITY OF SCRANTON
and The City of Scranton, Appellee,**

v.

**DALE AND DALE DESIGN AND DEVELOPMENT,
INC., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1998.

Decided Nov. 19, 1999.

David Kurtz, for Dale & Dale Development, Inc.

Paul A. Kelly, Jr., Solicitor Scranton Single Tax Office.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, Dale and Dale Design and Development, Inc., challenges the validity of a business privilege tax on the ground that the tax is prohibited by Section 2(11) of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6902(11), and is duplicative of the realty transfer tax. For the reasons that follow, we affirm the order of the Commonwealth Court which upheld the validity of the tax.

Appellant is a contractor engaged in the business of erecting and constructing new residential dwellings and selling them to third parties. From 1987 to the present, Appellant has procured building permits from the City of Scranton to construct residential dwellings for sale there. A realty transfer tax of three and seven-tenths percent (3.7%) is imposed upon parties presenting deeds for recording.[1]

1. The realty transfer tax is distributed as follows: one percent (1%) to the Commonwealth; one-half of one percent (.5%) to the School Dis-

The City and School District have enacted ordinances imposing a business privilege tax on entities engaged in business within the City. The pertinent section of the Business Privilege and Mercantile Tax Regulation provides as follows:

**Section 809   Persons Erecting Buildings or Otherwise Altering Repairing or Improving Real Property.**

a.   *General.* A contractor or subcontractor, resident or non-resident, engaged in the City in the business of erecting buildings, repairing or improving real property, or any other construction or installation work, is required to report as gross receipts all receipts derived from the performance of such contract.  The amount of receipts to be included in the tax base shall be the full contract price, that is, the total amount received or receivable by way of a fixed or determinable amount under the terms of the contract.  The contract price will be the one stated to be the consideration for the entire service provided by the contractor or subcontractor for property, materials, labor, supervision, overhead costs and profits without deduction therefrom for any arrangement or credit to the customer for any changes in contractual obligations which are not set forth in writing in the modified contract.  In the case of a general contractor, prime contractor or subcontractor, no deduction may be made with respect to amounts paid to subcontractors or suppliers.

For tax reporting years 1988 through 1994, Appellant did not file a business privilege tax return with the City Tax Office.  The tax due on Appellant's gross receipts was calculated by applying the appropriate tax rates for the years delinquent to the amounts reflected in building permits Appellant procured from City Hall. In 1993, the City and School District (hereinafter Appellees) filed an action in common pleas court for the collection of $35,850 in tax, penalties and interest.

The common pleas court entered judgment against Appellant.  It held that Appellant's activities qualified as work

trict of the City of Scranton;  and two and two-tenths percent (2.2%) to the City.

performed by a general contractor and were therefore subject to the business privilege tax. The court ruled that the Act did not exempt Appellant's business from the tax and that the business privilege tax was not duplicative of the realty transfer tax.

The Commonwealth Court affirmed. It rejected Appellant's argument that because it only constructed new residential dwellings it was not a *general* contractor subject to the tax. Relying on *Middletown Township v. Alverno Valley Farms*, 105 Pa.Cmwlth. 311, 524 A.2d 1039 (1987), *alloc. denied*, *Commonwealth v. Alverno Valley Farms*, 517 Pa. 600, 535 A.2d 1058 (1987), it held that section 2(11) of the Act did not preclude the assessment of a business privilege tax against a general contractor who built solely residential dwellings. It reasoned that the business privilege tax was based upon a business's gross receipts and did not tax the construction of new residential dwellings. It noted that Appellees utilized Appellant's building permits to assess the tax only because Appellant continually failed to provide records of its gross revenues. The court further held that the issue of whether the business privilege tax was duplicative of the realty transfer tax was decided against the taxpayer in *Comach Construction, Inc., v. City of Allentown*, 159 Pa.Cmwlth. 605, 633 A.2d 1336 (1993), *alloc. denied*, 539 Pa. 682, 652 A.2d 1327 (1994).

■ Our scope of review is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Westinghouse Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 539 Pa. 453, 652 A.2d 1306 (1995).

■ We first address Appellant's argument that the business privilege tax is barred by section 2(11) the Local Tax Enabling Act. This section provides that local governments shall not have the authority

[t]o levy, assess or collect a tax on the construction of or improvement to residential dwellings or upon the application

for or issuance of permits for the construction of or improvements to residential dwellings.

53 P.S. § 6902(11).

Appellant contends that Appellees violated the plain language of the Act by assessing the business privilege tax on the amounts reflected in its building permits. It maintains that this method of assessing the tax, as well as the limited nature of its business activity, distinguishes this case from *Middletown Township*. Appellant further argues that our decision *Heisey v. Elizabethtown Area School District*, 502 Pa. 571, 467 A.2d 818 (1983), confirms that the adoption of section 2(11) effectively eliminated a municipality's authority to calculate a tax utilizing building permits.

In *Middletown Township*, a building and construction firm engaged in the business of erecting new residential dwellings challenged the business privilege tax on the grounds that it was prohibited by section 2(11) of the Act. The Commonwealth Court held:

> The local tax in this case does not tax the same subject matter as specified in section 2(11) of the Act nor is it measured by the same base. The local tax is a tax on the privilege to do business and it is measured by the gross volume, determined by receipts, of business conducted by the taxpayer, whereas the prohibition under section 2(11) of the Act addresses taxes on the construction of a residence, and thus has no relationship to the volume of business conducted. The impact of the two taxes is on a totally different basis.

*Id.*, 524 A.2d at 1041.

Appellant's attempts to distinguish the present case are disingenuous. As in *Middletown*, the business privilege tax is imposed upon the privilege of conducting business within the City, determined by the gross receipts of the business. It is not a tax upon the construction of a residential dwelling or the issuance of a building permit, which is prohibited by the Act. The fact that Appellees were forced to estimate Appellant's gross receipts by utilizing the amounts reflected on its build-

ing permits does not alter the nature of the tax. It would be absurd to permit Appellant to benefit from its refusal to file business privilege tax returns and/or provide documentation to properly calculate the tax. Article V, Section 501(b) of the Business Privilege and Mercantile Tax Regulation states that if records are not available for review, the tax collector may "utilize whatever records or information are available to reconstruct, as accurately as possible, figures that reflect the business activity of the taxpayer for the period involved." This is precisely what Appellees have done.[2]

■ Appellant counters that Appellees never offered evidence that they requested Appellant's gross receipts and therefore it was improper for the lower courts to presume that Appellant refused to cooperate. Relying on *Cheltenham Township v. Cheltenham Cinema, Inc.*, 661 A.2d 23 (Pa. Cmwlth.1995), affirmed, 548 Pa. 385, 697 A.2d 258 (1997), it argues that Appellees should be precluded from collecting the tax because they failed to follow section 501(c) of the regula-

---

**2.** Appellant also contends that *Middletown Township* is distinguishable because the court there ruled that "[c]arrying on a construction business, such as that in which [taxpayer] is engaged, involves much more than the construction of a residence. Section 2(11) of the Act therefore does not prohibit the local tax which was enacted pursuant to Ordinance No. 266." *Id.* at 1041. Appellant maintains that because its business involves *only* the construction of residences, its gross receipts are synonymous with the amount reflected on the deeds, which is the figure upon which the realty transfer tax is assessed. Thus, it asserts that unlike the taxpayer in *Middletown*, the business privilege tax is imposed upon the same tax base as the realty transfer tax. Although the alleged duplicative nature of the tax will be discussed in more detail *infra*, Appellant's misplaced reliance on the above-cited language in *Middletown* requires further comment.

Appellant's argument hinges upon its assertion that it is not a *general* contractor under section 809 of the taxing ordinance because it only constructs residential dwellings. The lower courts rejected this argument and concluded that "[Appellant's] business activity within the City of Scranton can be classified as a 'General Contractor in the business of erecting and constructing new residential buildings for sale to unrelated third parties'" and therefore fell under section 809 of the ordinance. Trial Court Opinion at 2–3. As our limited grant of allocatur did not include review of the issue of whether Appellant was a general contractor, the lower court's determination in this regard is final. Appellant is therefore in the same posture as the taxpayer in *Middletown Township*.

tion, which grants the taxing authority the right to request review of the taxpayer's financial records.[3]

In *Cheltenham Township*, a local ordinance required the tax collector to estimate the amount due for taxes, penalty and interest, prior to instituting an action to collect unpaid taxes. The Commonwealth Court held that because the taxing authority failed to comply with this procedural requirement, it was precluded from assessing a business privilege tax against the taxpayer, a movie theater. Our Court affirmed the Commonwealth Court's decision on different grounds. Applying the rationale of *Middletown Township*, we held that section 6902(10) of the Local Tax Enabling Act, which prohibits the imposition of a tax on "admissions to motion picture theaters," did not preclude a municipality from imposing a business privilege tax upon the gross receipts of a cinema.

Notwithstanding the fact that a majority of our Court in *Cheltenham* did not embrace the lower court's holding regarding compliance with procedural requirements of a local tax ordinance,[4] the instant facts are distinguishable.Here, the regulation which Appellant contends that Appellees violated places no duty on the taxing authority. Instead, it merely directs the *taxpayer* to make available records supporting its tax returns. Thus, it is Appellant which violated section 501(c) and not Appellees.

■ Appellant's reliance on *Heisey v. Elizabethtown Area School District* is also misplaced. There, the school district imposed a tax upon the "cost of construction activity to residential construction." *Id.*, 467 A.2d at 818. We found that

**3.** Section 501(c) of the Business Privilege and Mercantile Tax Regulation states:

> If records are not available in the City to support the returns which were filed or which should have been filed, the taxpayer will be required to make them available to the Collector of Taxes either by producing them in a City location or by paying for the expenses incurred by the Collector of Taxes in traveling to the place where the records are regularly kept.

**4.** Two justices concurred in the result, finding that the substantive issue of whether the tax was precluded by the Local Tax Enabling Act was not properly before the Court.

because the incidence of the tax at issue was markedly similar in both purpose and effect to a tax on the transfer of real property, the tax was precluded by section 2 of the Local Tax Enabling Act, as amended by the Act of July 1, 1981, P.L. 184, § 1.[5] To the contrary, the tax in the instant case does not fall upon the "cost of construction activity," but rather is based upon a general contractor's gross receipts.

■■■■ Having determined that the tax is not prohibited by the Local Tax Enabling Act, we must next examine the related claim of whether the tax is duplicative of the realty transfer tax. It is well-established that

> [i]n determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. The incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied.

*Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A.2d 821, 825–826 (1957), *appeal dismissed*, 357 U.S. 571, 78 S.Ct. 1383, 2 L.Ed.2d 1547 (1958).

The Commonwealth Court applied this standard to a nearly identical factual scenario in *Comach Construction, Inc., v. City of Allentown*. In *Comach*, a general contractor engaged in the business of constructing residential dwellings and structures for sale to third parties challenged the business privilege tax imposed by the City of Allentown on the ground that it was duplicative of the realty transfer tax. The Commonwealth Court rejected the taxpayer's claim and held that the taxes had distinct subject matters, were not measured by the same base and did not hold the same party responsible for payment. The court noted that the subject matter of the

---

5. We noted, however, that section 2 also expressly permitted school districts that had adopted taxes on residential construction to continue to assess and collect the tax until June 30, 1982. Thus, we concluded that the Commonwealth Court should have declared the tax invalid as of July 1, 1982, rather than invalidate the tax as a whole.

realty transfer tax is the recording of the deed, while the subject matter of the business privilege tax is the privilege of conducting business within the jurisdiction of the taxing authority. It further found that the business privilege tax is measured by a company's gross receipts and is paid by the party engaging in business; while the realty transfer tax is measured by the consideration given for the real estate and is paid by the party desiring to record the deed. The court held that "the incidence of the business privilege tax on Comach applies to construction services, not just real estate sales, and is therefore not the same as the incidence of the state realty transfer tax upon the conveyance of real property." *Id.*, 633 A.2d at 1338. As evidence of distinct tax bases, the court further noted that the taxpayer's gross revenues exceeded the combined total of the considerations set forth in its recorded deeds.

Appellant contends that unlike *Comach*, there is no evidence that its gross receipts for the tax years at issue exceeded the amounts reflected in the deeds. It maintains that its gross receipts equal the proceeds from residential construction on which realty transfer taxes have been paid.[6] This argument fails for two reasons. First, Appellant has never provided any evidence of its gross receipts. It therefore cannot support its claim by a deficiency in the record that it created.[7] Second, Appellant's vice president testified that Appellant has constructed new residential dwellings on properties located in the City that were not owned by Appellant. N.T. 4/17/96 at 26. Consideration Appellant received for these construction services would be included in its gross receipts, yet would not be

6. In a similar vein, Appellant asserts that to "reconcile the present matter with *Comach*, the Commonwealth Court relied upon the erroneous finding that the Developer was a 'general contractor,' and that the procedure by which the Taxing Authorities calculated the tax at issue was a result of lack of cooperation on the part of the Developer." Appellant's Brief at 19. As noted in footnote 2, the determination by the lower courts that Appellant is a general contractor is controlling in this appeal.

7. The tax deficiency in *Comach* was discovered after the tax examiner for the City of Allentown audited the taxpayer's business privilege tax returns.

subject to a realty transfer tax. Thus, the record establishes that as in *Comach*, the subject matter and the base of the taxation are separate and distinct. Accordingly, the business privilege tax is not duplicative of the realty transfer tax.

The order of the Commonwealth Court is affirmed.