IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT
**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| GEORGE D. FISH, STEPHEN HRABRICK AND JONATHAN A. BRISKIN, | : | No. 29 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court dated 9/19/14 at |
| | : | No. 1940 CD 2013 affirming in part and |
| | : | reversing in part the order of the |
| v. | : | Montgomery County Court of Common |
| | : | Pleas, Civil Division, dated 9/23/13 at |
| | : | No. 2012-02530 |
| TOWNSHIP OF LOWER MERION, | : | |
| | : | |
| Appellant | : | ARGUED:  September 10, 2015 |

## OPINION

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  December 21, 2015**

In this appeal by allowance, we address whether the Local Tax Enabling Act's prohibition on taxing leases precludes a municipality from applying its business privilege tax to businesses whose sole income consists of rent payments on leased real property.

Appellant Lower Merion Township is a township of the first class. Article IV of its municipal code requires every person – defined generally as an individual or a for-profit business entity – engaging in a business, trade, occupation, or profession in the Township to pay an annual business privilege tax calculated as a percentage of gross receipts. *See* LOWER MERION TWP., PA., MUN. CODE art. IV, §§138-40, 138-42 (1976). Each such person must also purchase and display a business registration certificate and file an annual tax return. *See id.* §§138-41, 138-45, 138-46.

Appellees Fish, Hrabrick, and Briskin ("Lessors") each own one or more parcels of real estate in the Township that they rent to tenants pursuant to lease agreements. The Township notified Lessors that, for every such parcel, they were obligated to purchase a separate business registration certificate and pay the business privilege tax based on all rental proceeds. In this regard, the Township adopted the position that: (a) the leasing of real property constitutes a business, trade, occupation, or profession for purposes of Article IV of its code; and (b) each parcel was a discrete business location subject to registration, tax-return, and tax-payment requirements.

Lessors filed a complaint in the county court, naming the Township as defendant and seeking a declaratory judgment stating that, pursuant to the Local Tax Enabling Act (the "LTEA"),[1] the Township's business privilege tax could not be applied to rental proceeds from leases and lease transactions. Lessors did not challenge the validity of Article IV generally, as the LTEA authorizes the taxing authorities of various political subdivisions, including first-class townships, to "levy, assess and collect . . . taxes . . . on persons, transactions, occupations, privileges, subjects and personal property" within the subdivision's jurisdictional limits. 53 P.S. §6924.301.1(a). Rather, they observed that the LTEA's general grant of power in this regard is subject to an exception stating that such local authorities lack the ability to "levy, assess, or collect . . . any tax on . . . leases or lease transactions[.]" *Id.* §6924.301.1(f)(1). Lessors argued their real-property rental activities fall within the scope of this exception.[2]

---

[1] Act of Dec. 31, 1965, P.L. 1257 (as amended 53 P.S. §§6924.101-6924.901).

[2] Lessors also requested a declaration that Article IV's business-registration mandate cannot be applied to their rental activities, or, in the alternative, that the Township cannot require a separate registration fee for each property. These requests were denied, and the Commonwealth Court affirmed the denial. As the Township is the Appellant, no issue involving business registration is presently before the Court.

The parties eventually filed cross-motions for judgment on the pleadings. The court granted the Township's motion, denied Lessors' motion, and dismissed the complaint. The court issued an opinion explaining that it viewed the challenged tax as a gross-receipts tax and not a transactional tax such as the one disapproved in *Lynnebrook & Woodbrook Associates, L.P. v. Borough of Millersville*, 600 Pa. 108, 963 A.2d 1261 (2008) (holding that an ordinance imposing a flat $30.00 tax on the consummation of residential leases was prohibited by the LTEA). *See Fish v. Twp. of Lower Merion*, No. 2012-02530, *slip op.* at 3-4 (C.P. Montgomery Dec. 26, 2013).

A divided *en banc* panel of the Commonwealth Court reversed in relevant part. As pertains to the issue involved in this appeal, the court initially stated that Section 301.1(f)(1) of the LTEA, 53 P.S. §6924.301.1(f)(1), does not reflect a tax exemption, but carves out an exclusion or exception from the Township's taxing authority, meaning that any doubt about its reach should be resolved in the taxpayer's favor. *See Fish v. Twp. of Lower Merion*, 100 A.3d 746, 750 (Pa. Cmwlth. 2014) (*en banc*) (citing *Lynnebrook*, 600 Pa. at 117, 963 A.2d at 1266 (indicating that the statutory language in Section 301.1(f)(1) "should be construed as a tax exception – not a tax exemption – and thus construed against the taxing authority")). Applying this precept, and observing that the exception bars "any" tax on leases or lease transactions, the court concluded:

> Regardless of title, there is no material difference between a tax scheme that imposes a 1.5 mill tax upon the receipt of each rent payment (arguably a transactional tax), and a scheme that imposes a 1.5 mill tax payment annually based on all rent receipts (characterized by the Township as a business privilege tax). The only differences are title and timing. . . . Because the Township's [business privilege tax] would tax Lessors' lease revenue at a rate of 1.5 mills, it is a tax on leases or lease transactions and, thus, prohibited under the [Pennsylvania] Supreme Court's interpretation of Section 301.1(f)(1) of the LTEA in *Lynnebrook*.

*Id.* at 751 (footnote omitted).

President Judge Pellegrini authored a dissenting opinion, joined by Judge Leadbetter. The dissent distinguished *Lynnebrook* on the grounds that the tax in that matter was a flat tax expressly levied on lease transactions. The dissent indicated that the present tax, as it applies to Lessors, is imposed on the privilege of leasing property and not on leases or lease transactions themselves. In the dissent's view, the majority should have accorded this distinction controlling significance, as Pennsylvania courts have viewed privileges and transactions as distinct subjects of taxation, *see, e.g.*, *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 106, 511 A.2d 1321, 1324 (1986), and the LTEA authorizes the Township to tax privileges. In support of its position, the dissent highlighted *School District of Scranton v. Dale & Dale Design & Development, Inc.*, 559 Pa. 398, 741 A.2d 186 (1999), in which this Court upheld the application of a business privilege tax to a contractor that built residences notwithstanding that the LTEA prohibited localities from taxing the construction of, or improvements to, residential dwellings. *See Fish*, 100 A.3d at 753-54 (Pellegrini, P.J., dissenting).

We allowed further review to consider whether the Commonwealth Court erred in holding that the Township's "business privilege tax could not apply to a business receiving gross receipts from the business of leasing real estate[.]" *Fish v. Twp. of Lower Merion*, ___ Pa. ___, 112 A.3d 1209 (2015) (*per curiam*).

The Township's position largely echoes that of the Commonwealth Court dissent. It argues that: *Lynnebrook* is distinguishable as the tax there was levied directly on leases or lease transactions, and not on a privilege; this Court clarified in *Gilberti* that privileges and transactions are distinct subjects of taxation; and *Dale* should control the outcome here. The Township also maintains that the Commonwealth Court erred by failing to consider early decisions in which a city sales tax was held not to impermissibly duplicate a state-imposed mercantile tax, although the mercantile tax was calculated

based on the taxpayer's business volume. *See, e.g.*, *Blauner's, Inc. v. City of Phila.*, 330 Pa. 342, 346, 198 A. 889, 892 (1938) ("The city tax is a levy on sales, the state tax is a levy imposed for the privilege of conducting a particular kind of business, albeit the amount of the tax is measured by gross sales."). Finally, the Township contends that the Legislature understands "the distinction between a tax on something and a tax on privileges or uses related to that thing," Brief for Appellant at 13, as illustrated by the LTEA's manufacturing exception pursuant to which political subdivisions are precluded from imposing taxes on manufactured goods "or on any privilege, act or transaction related to the business of manufacturing." 53 P.S. §6924.301.1(f)(4). Since this same "privilege" prohibition does not appear in subsection (f)(1), the Township suggests that this Court should not read such provision as barring application of a general business privilege tax to a business whose revenue consists of rental income.[3]

Several municipalities have submitted *amicus* briefs supporting the Township's position. Their arguments are generally duplicative of those advanced by the Township, albeit they focus primarily on the distinction between taxing transactions and taxing privileges – or, alternatively, between direct and indirect taxation of lease income. They assert this Court's case precedent clarifies that the LTEA permits indirect taxation, via a business privilege tax, of otherwise untaxable transactions or activities.

---

[3] Separately, the Township notes that the Commonwealth Court repeatedly referenced the LTEA's prohibition on municipalities taxing "leases or lease transactions." *See, e.g.*, *Fish*, 100 A.3d at 751. The Township observes that a legislative change from "leases" to "leases or lease transactions" was effectuated by the Act of October 15, 2008, P.L. 1615, No. 130 ("Act 130"), which, notably, specified that the revision did not apply to municipalities taxing such transactions before July 1, 2008. *See* Act 130, §4. The Township finds such limitation relevant because: at most, the tax challenged here is imposed on revenues derived from lease transactions, and not the mere existence of a lease; and the Township's tax was enacted before July 1, 2008. In light of our disposition below, any perceived difference between "leases" and "leases or lease transactions" as the subject of a tax is of no present significance.

Lessors argue, first, that subsection 301.1(f)(1) should be read to expressly bar the tax in issue. They highlight *Lynnebrook*'s explanation that subsection (f)(1) represents an "unqualified prohibition on the taxation of leases." Brief for Appellees at 3 (quoting *Lynnebrook*, 600 Pa. at 119, 963 A.2d at 1267). Quoting dictionary definitions of "lease," Lessors submit that consideration is an essential and elemental component of a lease. Thus, they forward that a tax measured by such consideration is, in fact, a tax on leases. Lessors argue, moreover, that this premise is supported by *Lynnebrook* insofar as it held that a flat tax on lease *transactions* was disallowed by the pre-2008 version of the statute, which only facially precluded taxes on "leases." *See supra* note 3. In further support of a broad reading of (f)(1), Lessors observe that subsection 301.1(f) contains numerous subsections, most of which proscribe taxation relative to certain subjects using the term "a tax" rather than "any tax." *See, e.g.*, 53 P.S. §6924.301.1(f)(7) (precluding "a tax" on memberships in nonprofit organizations). Because the phrase "any tax" is used for (f)(1)'s lease-tax prohibition, Lessors reason that the Legislature must have intended an especially broad interpretation of that constraint. Relatedly, they argue that the "any tax" phraseology refers back to the types of taxes enumerated in the general grant of powers in subsection (a)(1), including privilege taxes. Lessors conclude that the phrase "any tax," as employed in (f)(1), must therefore be understood to subsume business privilege taxes insofar as they are levied – directly or indirectly – on lease income.

Alternatively, Lessors maintain the tax challenged here is a business privilege tax in name only, at least as applied to their leasing activities. They cite to cases suggesting that the true measure of a tax is not its name but how it operates in practice. *See, e.g.*, *Shelly Funeral Home, Inc. v. Warrington Twp.*, 618 Pa. 469, 477, 57 A.3d 1136, 1141 (2012) (explaining that, "irrespective of how taxes are described, reviewing

courts assess their validity based on how they operate in practice"); *Commonwealth v. E. Motor Express, Inc.*, 398 Pa. 279, 297, 157 A.2d 79, 89 (1959) ("[I]n the last analysis the nature of the tax depends not upon its label, but upon its incidence, i.e., its practical operation and effect."). Lessors state that, in practice, Article IV operates to tax the income from leases as demonstrated by the Township's decision to consider each rental property a separate place of business. They contend that, while there have been cases in which a business privilege tax was upheld although it captured income from activities excepted from taxation, in virtually all such matters the tax was levied upon monies derived from multiple sources, so that the reviewing court found that it was not a tax upon the excepted activity. *See, e.g.*, *Cheltenham Twp. v. Cheltenham Cinema, Inc.*, 548 Pa. 385, 697 A.2d 258 (1997) (upholding a business privilege tax as applied to the gross receipts of a movie theater, notwithstanding that the taxing authority was barred from taxing the sale of movie tickets, where the theater earned its gross receipts from ticket and concession sales). They observe, again, that the present tax as applied to them is distinguishable in that it is only levied upon lease income.

The underlying facts are not in dispute. The issue in this appeal, as noted, is whether the exception appearing at Section 301.1(f)(1) of the LTEA, 53 P.S. §6924.301.1(f)(1), bars application of the Township's general business privilege tax to persons or businesses whose sole income consists of rental payments. More particularly, the question is whether the prohibition of "any tax on . . . leases" precludes such application. This is an issue of statutory interpretation. As such, it is a question of law over which our review is plenary and *de novo*. *See, e.g.*, *In re D.L.H.*, 606 Pa. 550, 563, 2 A.3d 505, 513 (2010).

Initially, we reject Lessors' assertion that the phrase "any tax" as it appears in subsection 301.1(f)(1) is broader in scope than "a tax" as used elsewhere in subsection

301.1(f). Although "any" and "a" are different words, there is no difference in substance between statutory language barring "any tax" on a subject and language barring "a tax" on that subject. *Cf.* 1 Pa.C.S. §1902 (providing that, in statutory text, the singular includes the plural and *vice versa*). Nor are we persuaded by the suggestion that, to the degree "any tax" may refer back to the enumerated types of taxes that municipalities are otherwise authorized to enact, its use evidences a particularized legislative design to preclude application of a generalized business privilege tax to leasing activities. There is no textual support for this position and Lessors do not reference any decision in which such an interpretation has been endorsed. Moreover, such a reading would be in substantial tension with *Fischer v. City of Pittsburgh*, 383 Pa. 138, 118 A.2d 157 (1955), discussed below.

The Township's textual argument is more compelling. As noted, the Township highlights that, in the manufacturing exception, the legislative body not only precluded municipal taxes on the manufacturing of goods, it also prohibited taxes "on any *privilege, act or transaction related to*" the manufacturing of such goods. 53 P.S. §6924.301.1(f)(4) (emphasis added). The emphasized language would be superfluous if the legislative prohibition of "a tax on" manufactured goods had been intended, without more, to prohibit taxes on a business privilege "related to" the making of the goods. *See generally Commonwealth v. Ostrosky*, 589 Pa. 437, 450, 909 A.2d 1224, 1232 (2006) (citing *Holland v. Marcy*, 584 Pa. 195, 206, 883 A.2d 449, 456 (2005) (plurality) ("[W]e cannot assume that the legislature intended any words to be mere surplusage.")); 1 Pa.C.S. §1922(2) (providing that courts should presume the General Assembly intends the entire statute to be effective and certain). That being the case, we do not read subsection (f)(1)'s prohibition on lease taxes as encompassing a similar proscription as to privileges "related to" leases.

Additionally, the legislative decision to bar taxes on privileges, acts, or transactions relating to manufactured goods proved crucial in *Fischer*, where the Court stated that, absent such language, Pittsburgh's earned-income tax would have been enforceable as against the owners of a manufacturing concern in the city. Reasoning, however, that selling manufactured products is a privilege, act, or transaction associated with manufacturing, the Court disallowed such enforcement. *See Fischer*, 383 Pa. at 142-44, 118 A.2d at 159-60.[4] Conversely, in *Dale*, the Court dealt with circumstances directly analogous to those of the present case inasmuch as the exception at issue – a ban on municipal taxes on the construction of, or improvements to, residential dwellings, *see* 53 P.S. §6924.301.1(f)(11) – did not contain the expansive language of the manufacturing exception. A construction contractor involved solely in erecting residential dwellings questioned whether the city's business privilege tax could be enforced against it. This Court held that the tax could be enforced against the contractor, explaining that it was a tax on the privilege of doing business within the city, and not a tax upon the construction of residential dwellings as such. *See Dale*, 539 Pa. at 403, 741 A.2d at 189 (quoting *Middletown Twp. v. Alverno Valley Farms*, 105 Pa. Cmwlth. 311, 315, 524 A.2d 1039, 1041 (1987)).

*Dale*'s reasoning is consistent with a line of cases distinguishing business privilege taxes (or mercantile license taxes, which are similar in nature) from taxes on transactions or sales. In *Gilberti*, for example, this Court emphasized that the LTEA lists transactions and privileges as two distinct subjects of taxation, and hence, a business privilege tax could be applied to transactions occurring outside the city limits so long as those transactions were attributable to an office in the city – whereas a *transaction* tax

---

[4] *Fischer* involved the manufacturing exception in the LTEA's predecessor statute. That exception was, for present purposes, substantively identical to the one in the LTEA.

on such extraterritorial transactions would have been impermissible. *See Gilberti*, 511 Pa. at 106, 511 A.2d at 1324; *see also F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971) (holding that a business privilege tax levied on gross income, including income derived from the use of tangible property, did not duplicate a state tax on use of the same property, since the two taxes were levied upon different subjects); *Blauner's, Inc.*, 330 Pa. at 346, 198 A. at 892 (indicating that a city sales tax did not duplicate a state mercantile license tax since the city taxed sales whereas the state taxed the privilege of conducting business, notwithstanding that both taxes were measured by gross sales).

In light of this precedent, it is established law in Pennsylvania that business privileges and transactions are separate and distinct subjects of taxation. Additionally, the privilege tax here mirrors the Pittsburgh ordinance at issue in *Gilberti*, in that it is levied upon the privilege of doing business in the Township and, with certain exceptions not presently relevant, it is calculated based on gross receipts from transactions occurring anywhere – so long as they can be attributed to the Township.

This is not to say that a business privilege tax applicable *only* to leasing businesses would be permissible under subsection (f)(1). In this sense, we reaffirm *Lynnebrook*'s observation that subsection (f)(1) constitutes a tax exception to be broadly construed in favor of the taxpayer, as well as its ultimate holding that a tax directed specifically to lease transactions constitutes a prohibited tax on leases. *Cf. In re Sch. Dist. of Hampton Twp.*, 362 Pa. 395, 397, 67 A.2d 376, 377 (1949) ("[A] tax on the privilege of employing property is, from a practical standpoint, the same in effect as a tax upon the property itself[.]"). We also agree, in the abstract at least, with the Commonwealth Court's suggestion that there is no substantive difference between a tax upon the total of all rent payments and a tax on each individual rent payment. *See Fish*,

100 A.3d at 751. This is consistent with cases highlighted by Lessors, such as *Shelly Funeral Home*, which reiterate a longstanding precept that reviewing courts consider a tax's practical operation, and not merely its label. *See Pittsburgh Rys. Co. v. City of Pittsburgh*, 211 Pa. 479, 488, 60 A. 1077, 1089 (1905); *see also Allfirst Bank v. Commonwealth*, 593 Pa. 631, 643 n.10, 933 A.2d 75, 82 n.10 (2007) (citing cases).

The difficulty here is in the way the Commonwealth Court applied the principle. The court overlooked that, unlike the tax invalidated in *Lynnebrook*, the Township's tax is not targeted to leases. It is, rather, a general business privilege tax which encompasses all for-profit businesses that offer services to the public within the Township's borders. *See* LOWER MERION TWP., PA., MUN. CODE art. IV, §138-40 (1976). The question is whether businesses which derive their income only from leases must be excluded from the tax's reach. Based on the precedent discussed above, clarifying that privileges and transactions are separate subjects of taxation, as well as the absence of any language in subsection 301.1(f)(1) prohibiting taxes on privileges, acts, or transactions related to leases, we conclude that the Township's tax is enforceable relative to such businesses.

We acknowledge that the precedent on which we currently rely, including *Dale*, is in tension with other decisions which may be read to suggest that application of a generalized business privilege tax would be impermissible relative to a taxpayer whose revenues are derived exclusively from untaxable transactions. One notable example is *Cheltenham Cinema* – decided two years before *Dale* – in which the Court suggested in *dicta* that if the taxpayer had obtained its income solely from movie tickets, it would have escaped liability under the township's business privilege tax due to the LTEA's ban on taxing movie admission sales. *See Cheltenham Cinema*, 548 Pa. at 389-90, 697 A.2d at 261; *see also Busse*, 443 Pa. at 355, 279 A.2d at 17 (containing analogous

*dicta* relating to a prohibition on municipal taxation of tangible property).  To the extent such *dicta* conflicts with *Dale* and our present holding, it is disapproved.

The order of the Commonwealth Court is reversed and the matter is remanded for reinstatement of the common pleas court's order dismissing the complaint.


Mr. Justice Baer and Madame Justice Todd join this opinion.

Mr. Justice Baer files a concurring opinion.

Mr. Justice Eakin files a dissenting opinion in which Mr. Justice Stevens joins.