# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Overbrook Golf Club and | : | |
| Radnor Valley Country Club | : | |
| | : | |
| v. | : | No. 936 C.D. 2025 |
| | : | |
| Radnor Township, | : | Argued: May 12, 2026 |
| Appellant | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE McCULLOUGH                       FILED: June 10, 2026

Radnor Township (Township) appeals from the July 11, 2025 order of the Court of Common Pleas of Delaware County (trial court), which vacated the business privilege tax assessments issued by the Township to Overbrook Golf Club (OGC) and Radnor Valley Country Club (RVCC) (together, Clubs) and held that the Clubs' "membership dues, fees and assessments"[1] are not subject to the Township's business privilege tax. After careful review, we affirm.

---

[1] It is undisputed that the Clubs pay business privilege taxes to the Township on other sources of revenue, for example, non-member activities, carts, caddies, lockers and items sold in the pro shops. The issue in this appeal is focused specifically on whether the Clubs' "membership dues, fees and assessments" are subject to the Township's business privilege tax.

## I.  Background

A. Applicable Statutory and Code Provisions

*a.  The Local Tax Enabling Act*

The Township is a Pennsylvania Home Rule municipality.  The Local Tax Enabling Act (LTEA)[2] authorizes local municipalities to enact taxes on tangible objects or activities which the Commonwealth does not itself tax, subject to certain legislatively specified restrictions.  Section 301.1(a.1)(1) of the LTEA permits local municipalities, including the Township, to impose a business privilege tax as it provides, in pertinent part, "[a] local taxing authority may levy a tax on the privilege of doing business in the jurisdiction of the local taxing authority[.]"  53 P.S. § 6924.301(a.1)(1).[3]  As this Court has explained, "the subject matter of the business privilege tax is the privilege of conducting a business" in the municipality, with the tax

---

[2] Act of December 31, 1965, P.L. 1257, No. 511, *as amended*, 53 P.S. §§ 6924.101-6924.901.

[3] Section 301.1(a.1)(1) of the LTEA states in full:

> (a.1)(1) A local taxing authority may levy a tax on the privilege of doing business in the jurisdiction of the local taxing authority if:
>
> > (i) the privilege is exercised by conducting transactions in the jurisdiction of the levying local taxing authority for all or part of fifteen or more calendar days within the calendar year; or
>
> > (ii) the privilege is exercised through a base of operations in the jurisdiction of the levying local taxing authority. The gross receipts subject to this tax shall not include any receipts subject to a tax measured by such gross receipts which is imposed under subparagraph (i).

53 P.S. § 6924.301(a.1)(1).

"based on a business' gross receipts." *Comach Construction, Inc. v. City of Allentown*, 633 A.2d 1336, 1337 (Pa. Cmwlth. 1993).

The fundamental justification for the business privilege tax is that it compensates municipalities for providing the infrastructure, services, and legal framework that enable businesses to operate profitably within their borders. As our Supreme Court has explained, the LTEA allowed such local taxation "as a *quid pro quo* for businesses advantaging themselves of local governmental benefits, including the availability of police, fire, and other services." *S & H Transport v. City of York*, 210 A.3d 1028, 1031 (Pa. 2019) (quoting *V.L. Rendina, Inc. v. City of Harrisburg*, 938 A.2d 988, 995 (Pa. 2007).

Although municipalities are authorized to impose business privilege taxes, the LTEA excluded from this taxing power certain enumerated objects or activities. *See* 53 P.S. § 6924.301.1. In particular, municipalities are forbidden to

> levy, assess or collect **a tax on** membership in or **membership dues, fees or assessments of** charitable, religious, beneficial or **nonprofit organizations** including but not limited to sportsmens, recreational, **golf** and tennis **clubs**, girl and boy scout troops and councils.

53 P.S. § 6924.301.1(f)(7) (emphasis added).

### b. *The Township's Business Privilege Tax Ordinance*

As authorized by the LTEA, the Township enacted the Business Privilege Tax Ordinance (BPT Code) to levy a business privilege tax on **"[e]very person engaging in a business**, trade, occupation or profession in the Township." BPT Code § 260-42 (emphasis added), (Reproduced Record (R.R.) at 646a-47a.) Under Section 260-40 (Definitions) of the BPT Code, "businesses, trades, occupations and professions" means:

3

> **all businesses**, trades, occupations and professions **in which there is offered any service or services to the general public or a limited number thereof**, including but not limited to financial business and those enterprises engaged in by hotel operators; motel operators; office and/or residential apartment building operators; parking lot and garage operators; warehouse operators; lessors of tangible personal property; physicians and surgeons; osteopaths; podiatrists; chiropractors; veterinarians; optometrists; pharmacists; lawyers; dentists; engineers; architects; chemists; certified public accountants; public accountants; funeral directors; promoters; agents; brokers; manufacturer's representatives; advertising and public relations agencies; real estate brokers; insurance brokers and agents; cable television operators; operators of places of amusement providing either passive or active recreation; vending machine operators; barbershop operators and beauty shop operators; shoe repair shop operators; tailors; upholsterers; electrical, plastering, bricklaying, carpentry, heat, ventilating, plumbing and painting contractors engaged in building or other construction of any kind or in the alteration, maintenance or repair thereof; and repairers of electrical, electronic and automotive machinery and equipment or other machinery and equipment and other wares and merchandise.

BPT Code § 260-40 (emphasis added). Notably, nonprofit clubs like those at issue here, are not specifically mentioned or described. "Services" include "[a]ny act or instance of helping **or benefitting another for a consideration**." *Id.* (emphasis added). The Township's business privilege tax is measured by "gross receipts," which are defined in Section 260-40 of the BPT Code as

> **gross amount of cash**, credits or property of any kind or nature received in both cash and credit transactions allocable or **attributable to the Township by reason of any** sale made (including resale of goods, wares or merchandise), **service rendered** (including labor and any materials employed in or becoming part of the service) or commercial or **business transactions in connection with any business**, trade, occupation or profession.

4

*Id.* (emphasis added).

The Township has also adopted Business Privilege and Mercantile Tax Regulations (BPMT Regulations) that provide further interpretations of the BPT Code. *See* R.R. at 706a-51a. Section 202 of the BPMT Regulations requires that "[a]ll . . . persons doing business within the Township (primarily service providers) must file a Business Privilege Tax Return." BPMT Regulations, § 202. "Business activity" is defined in Section 201 of the BPMT Regulations as "any significant participation, by a Person, in efforts to offer a service or sale to another, or to engage in commercial transactions." BPMT Regulations § 201.

B. Factual and Procedural Background

The Clubs operate private social clubs and were created for the purpose of recreation for their members. (Trial Court Opinion, June 18, 2025, Finding of Fact (F.F.) No. 1.) OGC is a nonprofit recreational club organized under the laws of Pennsylvania and exempt from federal income taxes as a social club under I.R.C. § 501(a), (c)(7).[4] It is owned by its members. (F.F. No. 10.) As with OGC, RVCC is a recreational club organized as a Pennsylvania nonprofit. RVCC is also owned by its members. (F.F. No. 11.)

Each Club has various levels of membership which pay different amounts of dues, initiation fees and annual assessments. (F.F. No. 12.) Initiation fees are used to underwrite long-term capital improvements. (R.R. at 183a-84a.) There are no services received in exchange for initiation fees or capital assessments for members of OGC or RVCC. (F.F. No. 13.) The payment of membership dues and fees permits members to have club access. The amount of dues owed varies depending on the

---

[4] This section exempts from taxation "(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder." I.R.C. § 501(c)(7).

5

category of membership one has. Membership dues are applied to club operations. (F.F. No. 14.) Initiation fees and capital assessments are applied to specified purposes at the Clubs. (F.F. No. 15.)

In 2014, the Township initiated an audit of the Clubs and concluded that the Clubs had improperly excluded from the business privilege tax base their receipts from membership dues, fees, and assessments. The Township and the Clubs entered into Settlement Agreements, acknowledging that the Pennsylvania Supreme Court was considering an appeal in *Fish v. Township of Lower Merion*, 128 A.3d 764 (Pa. 2015), the disposition of which could affect the outcome of the Township's position on whether membership dues, fees, and assessments should be excluded from business privilege taxes.

On December 21, 2015, the Supreme Court of Pennsylvania decided *Fish*. In *Fish*, the Supreme Court considered whether the LTEA's prohibition on taxing "leases and lease transactions" in Section 301.1(f)(1) precluded a township from applying its business privilege tax to the rental proceeds of a business engaged in the leasing of real property. Noting that business privileges and transactions are separate and distinct subjects of taxation, the Supreme Court held that the limitations in Section 301.1(f)(1) of the LTEA prohibit a transactional tax on "leases or lease transactions" but do not prohibit a business privilege tax on the privilege of conducting a for-profit business within the township as a landlord. *Fish*, 128 A.3d at 771.

On May 12, 2022, the Township's Finance Director determined, based on the *Fish* decision,[5] that the Clubs should not have excluded membership dues, fees, and assessments from gross receipts for purposes of business privilege taxes, and issued

---

[5] The argument being that *Fish* held that the exclusion in Section 301.1(f)(1) did not preclude imposition of a business privilege tax on the privilege of being a landlord in the municipality, but only a "direct" tax on the lease transaction itself.

assessments of purported delinquencies as follows: (a) OGC: delinquent tax principal in the amount of $94,608 for tax years 2016/2017 – 2020/2021; (b) RVCC: delinquent tax principal in the amount of $37,857 for tax years 2016/2017 – 2020/2021 (Assessments). (R.R. at 629a-44a.)

Both Clubs paid the Assessments under protest and petitioned for an Administrative Appeal. On October 24, 2022, the Local Tax Hearing Officer affirmed the Assessments. The Clubs thereafter filed a *de novo* appeal to the trial court. A two-day bench trial was held on December 3 and 4, 2024.

The Township presented the testimony of certified public accountant (CPA), Kevin Barrett, who conducted the audits. CPA Barrett appeared as a fact witness and not as an expert. (R.R. at 126a.) Based on his experience as a member of two other private country clubs, CPA Barrett believed members of OGC and RVCC receive benefits and privileges, in the form of access to golf courses, tennis courts, pools, dining rooms, and lockers, in exchange for payment of membership dues, fees, and assessments. *Id.* at 117a. He believed that because these "privileges" are provided in exchange for consideration, they constitute "services rendered" to a limited number of the general public and that, therefore, the Clubs engage in "business." *Id.* at 128a. It was his factual opinion that the payment of dues, fees and assessments in exchange for these services meets the requirements of a commercial or business transaction under the BPT Code. *Id.* at 126a. Therefore, he considered the cash collected by the Clubs on these business transactions to be "gross receipts" upon which the business privilege tax is measured. *Id.* at 129a-31a.

Gary Williams, CPA, also appeared on behalf of the Township as a fact witness. He was asked by the Township to prepare the Clubs' Assessments and include membership dues, fees and assessments. Like CPA Barrett, CPA Williams believed

that the payment of membership dues, fees and assessments in exchange for Club privileges constitutes a "business" transaction that is subject to the Township's business privilege tax. *Id.* at 143a.

Steven D. Flick, CPA, testified at trial on behalf of the Clubs. CPA Flick serves as the Clubs' accountant and for the past 45 years has specialized in the nonprofit industry, including providing tax and financial accounting services to social clubs. *Id.* at 220a, 231a-32a. For purposes of preparing the Clubs' federal and state tax returns, CPA Flick treats the Clubs as nonprofits. *Id.* at 243a-44a. He opined that the act of the Clubs' members rendering payment for their dues, assessments and fees is a revenue transaction, rather than a "business" transaction. *Id.*

After the trial concluded, the parties submitted proposed findings of fact and conclusions of law. On June 18, 2025, the trial court entered an order invalidating the Assessments and directing the refund of the Assessment paid by each Club under protest. In reaching this conclusion, the trial court decided that the Clubs

> **are not businesses rendering services** as defined by [the Township's] BPT [Code]. Both OGC and RVCC are recreational golf clubs. The LTEA expressly sets forth that local authorities do not have the authority to assess membership dues, fees and assessments from nonprofit organizations. Accordingly, [the dues, fees and assessments paid by] OGC and RVCC [in response to the BPT assessments issued by the Township] are not subject to [the Township's] BPT.

(Trial Court Order, June 18, 2025, at 1) (emphasis added). In rendering its ruling, the trial court provided the following footnote:

> This court finds this case distinguishable from *Fish v. Lower Merion*, 128 A.3d 764 ([Pa.] 2015) in which the [C]ourt upheld the imposition o[f] business privilege taxes on lease income proceeds for a profit-generating business that

8

generated one type of revenue. In the instant case, the dues, fees and assessments for the maintenance and upkeep of two private recreational clubs are not income generating "for-profit businesses offering services to the public" as were at issue in *Fish*.

*Id.* at 1 n.1. The Township thereafter filed a timely notice of appeal to this Court.

## II.     Issues

On appeal,[6] there are two issues presented for our consideration: (1) whether the trial court erred by deciding that the Clubs do not engage in "business," as defined by the BPT Code; and alternatively (2) whether the trial court erred by limiting *Fish* to its facts, and concluding that Section 301.1(f)(7) of the LTEA expressly prohibits the Township from imposing a business privilege tax on membership dues, fees and assessments.

## III.     Analysis

The Township first argues that the trial court erroneously decided that the Clubs did not engage in the type of "business" which subjects them to the business privilege tax. The Township argues that, based on the definition in the BPT Code, its business privilege tax

> applies to "[e]very person engaging in a business, trade, occupation or profession in the Township." The BPT Code defines "business" as "All businesses . . . in which there is offered any service or services to the general public or a

---

[6] Where a common pleas court takes additional evidence in its *de novo* review of a tax assessment appeal case, this Court's review is limited to whether the common pleas court abused its discretion, committed an error of law, or made findings unsupported by substantial evidence. *Sher v. Berks County Board of Assessment Appeals*, 940 A.2d 629, 632 n.4 (Pa. Cmwlth. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Norwegian Township v. Schuylkill County Board of Assessment Appeals*, 74 A.3d 1124, 1128 n.3 (Pa. Cmwlth. 2013). The common pleas court, sitting as factfinder, "maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. [ ] As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence[.]" *In re PennDelco School District*, 903 A.2d 600, 608 (Pa. Cmwlth. 2006).

limited number thereof. . ." In turn, the BPT Code defines "service" as "any act or instance of helping or benefiting another for a consideration."

(Township's Br. at 36) (citations omitted).

The Township asserts that because the Clubs offer "services" (in the form of intangible benefits) to their members in return for payment of dues, fees, and assessments, they engage in "business" as defined by the BPT Code. The Township argues that each Club engages in business "for the simple reason that it benefits its members for consideration." *Id.*

The Township further contends that, by definition, the BPT Code does not limit application of the business privilege tax to businesses conducted for gain or profit. Rather, it applies to "all businesses . . . in which there is offered any service or services to the general public or a limited number thereof." BPT Code § 260-40.

In response, the Clubs assert that the Township cannot impose a business privilege tax on membership dues, fees, and assessments under the plain language of its BPT Code. They submit that they are not subject to business privilege taxes because they do not engage in a business. Rather, they assert that they are nonprofit organizations operating as recreational clubs. They contend that the monies they collect for membership dues, fees, and assessments are not the product of "business activity," as defined in the BPT Code ("any significant participation, by a Person, in efforts to offer a service or sale to another, or to engage in commercial transactions"). Additionally, they contend that the monies the Clubs collect for membership dues, fees, and assessments do not constitute "gross receipts," which by BPT Code definition result only from a "sale made," "service rendered," or "commercial or business transactions in connection with any business, trade, occupation or profession." BPT Code § 260-40.

10

When interpreting a municipal ordinance, this Court is guided by general rules of statutory construction. *Council of Middletown Township v. Benham*, 523 A.2d 311, 315 (Pa. 1987). "[T]he object of all interpretation and construction of all statutes is to ascertain and effectuate the intention" of the governing body. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *accord Benham*, 523 A.2d at 315. When interpreting an ordinance, we construe words and phrases according to their plain meaning. *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 369 (Pa. Cmwlth. 2015); *Benham*, 523 A.2d at 315. If possible, we are to give effect to all the ordinance's provisions. *Riverfront*, 109 A.3d at 369; *see* 1 Pa.C.S. § 1921(a).

A. *Whether the Clubs Engage in a Business under the BPT Code*

Initially, we note that the BPT Code's definition of a "business" is not helpful in defining a "business" since it relies on the very word it seeks to define.[7] *See* BPT Code § 260-40 (defining "**business**" as "**all businesses** . . . in which there is offered[] any service or services to the general public or a limited number thereof." (emphasis added)). While that definition teaches that a "business" encompasses a specific **type** of business to which the BPT Code applies, *i.e.*, those which "offer any service or services to the general public or a limited number thereof," that definition sheds no light on the first component of the definition – whether the Clubs are "persons engaging in a business, trade, occupation or profession in the Township." BPT Code, § 260-42. Before we even get to whether the Clubs "offer[] any service or services to the general public or limited number thereof," we must first determine if they are, in fact, "engaging in a business" because only "person[s] **engaging in a business**, trade,

---

[7] The first rule of meaningful definition is that the term being defined or a synonym of it should not appear in the definition. *See Coleman v. Wilson*, 933 F. Supp. 954 (E.D. Cal. 1996).

occupation or profession in the Township" are subject to the business privilege tax. *Id.* (emphasis added). The BPT Code's definition of "business" sheds no light on that initial query.

Tribunals confronted with interpreting undefined terms in an ordinance are guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning. *Diocese of Altoona–Johnstown v. Zoning Hearing Board of Borough of State College*, 899 A.2d 399 (Pa. Cmwlth. 2006). Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014 (Pa. Cmwlth. 2002); *Nether Providence Township v. R.L. Fatscher Associates, Inc.*, 674 A.2d 749, 750-51 (Pa. Cmwlth. 1996); *see also Huntley v. Huntley*, 964 A.2d 855, 867 (Pa. 2009) (approving this Court's interpretation of an undefined term in an ordinance based on the definition from the enabling statute).

The BPT Code's enabling statute, the LTEA, defines "business" as "[a]n enterprise, activity, profession or any other undertaking of an unincorporated nature conducted **for profit** or ordinarily conducted **for profit** whether by a person, partnership, association or any other entity." 53 P.S. § 6924.501 (emphasis added). Consistent with this definition, Black's Law Dictionary defines "business" as: "A commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." *Business*, BLACK'S LAW DICTIONARY (12th ed. 2024). The Merriam-Webster Dictionary similarly defines "business" as: (a) "a usually commercial or mercantile activity engaged in as a means of livelihood"; (b) "a commercial or sometimes an industrial enterprise"; (c) "dealings or transactions

12

especially of an economic nature." *Business*, MERRIAM WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/business (last visited June 9, 2026). The Bouvier Dictionary, which the United States Supreme Court has recognized, defined "business" as: "[t]hat which occupies the time, attention and labor of men for the purpose of a livelihood or profit." *Commissioner v. Groetzinger*, 480 U.S. 23, 27 (1987).

Based on the plain and ordinary definition of the term "business" and the LTEA's approved usage of the term, we conclude that to be considered a "business" under the Township's BPT Code, the Clubs must "offer[] any service or services to the general public or a limited number thereof" **and** conduct their operations for profit.

This interpretation is also consistent with the BPT Code's list of examples of services, all of which are clearly and unmistakably service-oriented entities which are in business to make a profit. *See* BPT Code § 260-40. Notably absent from that list is any form of **nonprofit** organizations such as private golf or tennis clubs.

Applying this definition here, a review of the evidence indicates, as an initial matter, that the Clubs are not operating for a profit. There is no dispute that the Clubs are not-for-profit social clubs. They are not a commercial enterprise carried on for profit or as a livelihood. They are member-owned. An individual cannot "do business" for a profit with himself. By extension, members of a member-owned club do not "do business" with the club.[8] No part of the Clubs' net earnings inures to the benefit of any private shareholder. There was no evidence presented to establish that

---

[8] We recognize that it is possible for a nonprofit organization to engage in certain activities for gain or profit that would be subject to the business privilege tax. *Phoebe Services, Inc. v. City of Allentown*, 262 A.3d 660, 667 (Pa. Cmwlth. 2021). The Clubs exist to provide a venue for golf and other athletic activities as well as for social activities for members and their guests. Consistent with this mission, the Clubs generate a large variety of revenue and receipts. The Clubs pay business privilege taxes on many of these receipts, such as those generated by pro shop purchases, locker and caddy use, and non-member activity. That is not what is at issue here.

13

the Clubs are investor-owned (for profit). No profits or dividends are distributed to members. The dues collected from members are applied to the Clubs' operations. Initiation fees and capital assessments are applied to specified purposes at the Clubs. According to CPA Flick, whom the trial court credited, the Clubs operate as nonprofits, not as businesses as defined by the BPT Code, and the members' payment of dues constitutes a revenue transaction, and not a business transaction.

Accordingly, with profit as the guidepost by which the applicability of the business privilege tax is determined, we conclude that the Clubs are not engaged in a "business" under the BPT Code. *See Duquesne Club v. Pittsburgh*, 87 A.2d 81 (Pa. Super. 1952) (holding that because the club supplied food service to its members not for profit but for convenience of its members, it was not conducting business subject to a mercantile tax); *Philadelphia School District v. Frankford Grocery Co.*, 103 A.2d 738 (Pa. 1954) (holding that "business" as contemplated by the Philadelphia School District Tax Act means business for gain or profit, with a profit motive and disagreeing with the school district's view that "business" should include any commercial activity and not limited to a business carried on for gain or profit).

Moreover, we agree with the trial court that the Clubs are not engaged in "business" for the additional reason that their members do not receive "services" in exchange for membership dues, fees or assessments.

As noted, the BPT Code defines "service" as "any act or instance of helping or benefiting another for a consideration." BPT Code § 260-40. It is the Township's position that the Clubs' members are "benefitted" by the many privileges they obtain in exchange for the dues, fees, and assessments, including, "access to well-tended golf courses, the pools, the tennis courts, the dining facilities, tennis lessons, swim lessons, and use of gathering spaces." (Township's Br. at 35.) However, the

14

Township has provided no authority to support its argument that receiving access to a private club's facilities in exchange for membership dues is synonymous with "service", which the BPT Code defines as an "act or instance of helping or benefiting another for consideration." Nor do we believe that is the case. The inherent defect in the Township's argument is that the Clubs here are member-owned. The ownership structure distinguishes member-owned clubs from commercial enterprises that provide services to customers. Our caselaw has characterized the member-club relationship as one of ownership and contractual rights. *See*, *e.g.*, *McCaffrey v. Pittsburgh Athletic Association*, 293 A.2d 51 (Pa. 1972); *Kensington National Bank v. Cedarbrook Country Club*, 54 A.2d 838 (Pa. Super. 1947). The rights members receive—access to facilities and club privileges—flow from their ownership interest and the contractual terms contained in membership certificates and bylaws, not from a commercial service arrangement. Thus, while members do receive access to facilities and amenities in exchange for dues, fees, and assessments, they do so as collective owners managing their own property for mutual benefit, not as customers purchasing services from an independent business.

Accordingly, based on the foregoing, we conclude that the trial court did not err in determining that the Clubs are not engaged in business as contemplated under the BPT Code. The evidence of record supports the trial court's ruling. Suffice it to say, because the Clubs are not engaging in business under the BPT, the definition of "gross receipts" has no relevance and therefore no application to an entity that is not a "business, trade, occupation, or profession." Therefore, we need not address the

Township's argument that the Clubs' membership dues, fees, and assessments are "gross receipts" under its BPT Code.[9]

       Accordingly, for the foregoing reasons, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision for this case.

---

[9] Due to our disposition of the first issue, we need not address the Township's alternative argument that the trial court misapplied the exclusion in Section 301.1(f)(7) of the LTEA and mistakenly distinguished the Supreme Court's holding in *Fish*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Overbrook Golf Club and       :
Radnor Valley Country Club      :
                               :
          v.             :    No. 936 C.D. 2025
                               :
Radnor Township,                :
                Appellant      :

## _**ORDER**_

AND NOW, this 10th day of June, 2026, the July 11, 2025 order of the Court of Common Pleas of Delaware County is hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge