# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mid-Atlantic Systems of WPA, Inc., : 
 Appellant : 
 : 
 v. : No. 588 C.D. 2018
 : Submitted: February 11, 2019
The Tax Office of the Municipality : 
of Monroeville : 


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
   HONORABLE ROBERT SIMPSON, Judge
   HONORABLE P. KEVIN BROBSON, Judge


OPINION BY
JUDGE COHN JUBELIRER        FILED: March 4, 2019


Mid-Atlantic Systems of WPA, Inc. (Mid-Atlantic) appeals from the March 27, 2018 Order of the Court of Common Pleas of Allegheny County (common pleas) denying Mid-Atlantic's appeal from the Decision of a Tax Hearing Officer (THO) of the Tax Office of the Municipality of Monroeville (Tax Office). The THO denied Mid-Atlantic's Consolidated Tax Appeal and Petition for Refund of Business Privilege Taxes for Tax Years 2012 to 2016 (Tax Appeal) and found that Mid-Atlantic owed $51,712.15 in additional Business Privilege Taxes (BPT), penalties, and interest. On appeal, Mid-Atlantic argues the Municipality of Monroeville (Monroeville) cannot assess the BPT against it because Monroeville is precluded from doing so by Section 12 of the Home Improvement Consumer Protection Act[1]

---

[1] Act of October 17, 2008, P.L. 132, 73 P.S. § 517.12 (providing for the preemption of local registration, licensing, or fee requirements by a political subdivision for home improvement contractors that are licensed under the Home Improvement Consumer Protection Act).

(HICPA) and Subsections 301.1(f)(1) and (f)(11) of the Local Tax Enabling Act[2] (LTEA). Mid-Atlantic further asserts that, because Monroeville's taxing scheme as applied to it is invalid under HICPA and the LTEA, that scheme violates the Uniformity Clause of the Pennsylvania Constitution[3] and the Equal Protection Clause of the United States Constitution.[4] Finally, Mid-Atlantic seeks the abatement of the penalties, interest, and costs as permitted by Monroeville's BPT Regulations. Discerning no error, we affirm.

## I. Background

### A. *Monroeville's BPT Ordinance and Regulations*

Section 3.A of Monroeville's Ordinance 2329 (BPT Ordinance), enacted pursuant to the LTEA, assesses "an annual tax . . . on each dollar of volume of the gross annual receipts" on "[e]very person engaging in any business in the Municipality . . . ." (Reproduced Record (R.R.) at 97a.) The BPT "is a tax on the privilege of doing business in . . . Monroeville." (*Id.* at 122a.) For corporations, the BPT is calculated on the corporation's gross receipts. (*Id.* at 121a.) In order to ascertain what businesses are subject to the BPT, Monroeville's BPT Regulations state that anyone "desiring to do business in . . . Monroeville [is] required to obtain a business privilege . . . license (business license) . . . ." (*Id.* at 110a; *see also* Section 5 of the BPT Ordinance, R.R. at 98a.) To obtain a business license, Monroeville

---

[2] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6924.301.1(f)(1), (11) (relating to the delegation of taxing powers to local municipalities and exceptions from those taxes).

[3] Article VIII, section 1 of the Pennsylvania Constitution, Pa. Const. art. VIII, § 1 (requiring uniformity in taxation).

[4] Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV (providing, in relevant part, that a state shall not "deny to any person within its jurisdiction the equal protection of the laws").

requires the completion and filing of a business registration form with Monroeville's Tax Collector and payment of a yearly fee of $25.00. (R.R. at 113a.) If a business owes taxes to Monroeville, including the BPT, no license will be issued. (*Id.*) An entity that engages in business in Monroeville without obtaining a license can be subject to a penalty and fine. (*Id.* at 116a.)

## *B. Monroeville's Assessment of the BPT Against Mid-Atlantic*

Mid-Atlantic is a Pennsylvania corporation that "improv[es] real property through customization, installation and application of basement waterproofing materials, technologies and techniques." (Common Pleas 1925(a) Opinion (1925(a) Op.) at 2.) It began its business operations in Monroeville on March 1, 2012, and this location is its principal place of business. Mid-Atlantic registered with the Tax Collector, obtaining a business license and paying the annual business license fee for the tax years 2012 through 2016 (Reassessment Years). It also filed BPT returns and paid that tax in the Reassessment Years. In August 2016, the Tax Office requested Mid-Atlantic to provide records of its gross receipts for the Reassessment Years. Upon reviewing those records, the Tax Office issued Notices of Assessment, assessing additional BPTs, penalties, and interest based on Mid-Atlantic's purported failure to report all of its gross receipts. After an informal conference to discuss excluding Mid-Atlantic's gross receipts from the BPT and an abatement, the Tax Office rejected Mid-Atlantic's arguments and abatement request.

Mid-Atlantic filed an appeal with the Tax Office.[5] The Tax Office requested that Mid-Atlantic submit additional records to support claims made in that appeal.

---

[5] Mid-Atlantic filed one petition on November 17, 2016, and a supplement to that petition on December 13, 2016. (R.R. at 3a-86a.)

3

Thereafter, the Tax Office issued Revised Notices of Assessment, which reflected adjustments based on the additional records:

| | BPT | | | | | |
|---|---|---|---|---|---|---|
| Year | Reported | *Adjusted* | Additional Assessed | Penalties | Interest | Total |
| 2012 | $0.00 | $3,818.07 | $3,818.07 | $1,164.51 | $1,164.51 | $6,147.09 |
| 2013 | $74.95 | $4,581.69 | $4,506.74 | $1,104.15 | $1,104.15 | $6,715.04 |
| 2014 | $179.88 | $9,450.79 | $9,270.91 | $1,715.12 | $1,715.12 | $12,701.15 |
| 2015 | $205.81 | $11,382.12 | $11,176.31 | $1,397.04 | $1,397.04 | $13,970.39 |
| 2016 | $0.00 | $10,277.42 | $10,277.42 | $668.03 | $668.03 | $12,178.48 |
| **Total** | $460.64 | $39,510.09 | **$39,049.45** | $6,048.85 | $6,048.85 | **$51,712.15** |

(R.R. at 174a (emphasis in original).)  Mid-Atlantic timely filed a BPT return for 2017 and paid $6,056 under protest.

*C. Mid-Atlantic's Tax Appeal and the THO's Decision*

On July 31, 2017, Mid-Atlantic filed the Tax Appeal,[6] asserting Monroeville improperly assessed the BPT against it.  Therein, it sought relief related to the Reassessment Years (2012-2016).[7]  Mid-Atlantic first argued that Monroeville could not assess the BPT and related penalties and interest against Mid-Atlantic because Monroeville was preempted from doing so by Section 12 of HICPA, which states that "[r]egistration under [HICPA] shall preclude any requirement of payment of a

---

[6] It appears that the Tax Appeal is the same appeal as that filed in November and December 2016.

[7] Mid-Atlantic included the 2017 tax year in its appeal to common pleas of the THO's decision.  (R.R. at 171a.)

fee or registration or licensing of any home improvement contractor by any political subdivision," 73 P.S. § 517.12. Mid-Atlantic asserted it could not be made to pay the BPT because doing so required it to register and obtain a license from Monroeville.

The THO rejected this argument, holding there is a distinction between the licensing or registration of an entity or person and the taxation of the privilege of doing business within a municipality under the LTEA. (Decision at 3.) The assessment of the BPT and the related registration/licensing requirement on Mid-Atlantic, the THO reasoned, was not based on Mid-Atlantic's status as a home improvement contractor or the intention of regulating Mid-Atlantic's contracting business, but on the privilege of Mid-Atlantic conducting its business operation within Monroeville. The BPT and the registration/licensing requirements, the THO explained, were "imposed upon **all** business enterprises in [Monroeville] which may be lawfully subject to the tax pursuant to the LTEA." (*Id.* (emphasis added).)

The THO additionally rejected Mid-Atlantic's attempt to "bootstrap" the HICPA's prohibition against local registration and licensing of home improvement contractors to the assessment of the BPT. The THO concluded this argument was not supported by the Supreme Court's decision in *City of Philadelphia v. Clement & Muller, Inc.*, 715 A.2d 397, 398 (Pa. 1998), which described the boundaries of preemption. (Decision at 4.) The THO observed that, even if Monroeville's licensing/registration scheme was preempted, this did not lead to the conclusion that Mid-Atlantic was not subject to the BPT. According to the THO, the intended target of Section 12 of HICPA was clear on its face and was limited to the registration and licensing of home improvement contractors in order to regulate those entities' construction activities. Because of that clear target, the "permitted" "outer bounds"

5

of that preemption could be determined and did not include the preemption of the assessment of a BPT. (*Id.* (citing *City of Philadelphia*, 715 A.2d at 398).)

Mid-Atlantic next argued it does not have to pay the BPT, citing Subsections 301.1(f)(1) and (f)(11) of the LTEA. Subsection (f)(1), Mid-Atlantic asserted, excepts certain activities "from any tax . . . on a privilege, . . . subject, [or] occupation . . . which is now or does hereafter become **subject to a State tax or license fee**," 53 P.S. § 6924.301.1(f)(1) (emphasis added), and, citing *National Biscuit Co. v. City of Philadelphia*, 98 A.2d 182 (Pa. 1953) (*National Biscuit*), Mid-Atlantic claimed the fee it pays under HICPA is the type of "State tax or license fee" that falls under this exception. Subsection (f)(11) likewise supported an exception here, Mid-Atlantic argued, because that provision precludes taxation "on the construction of or improvement to residential dwellings . . . ," 53 P.S. § 6924.301.1(f)(11), and Mid-Atlantic provides these services.

The THO was unpersuaded by Mid-Atlantic's arguments and held that *National Biscuit*, as well as *School District of City of Scranton v. Dale and Dale Design Development, Inc.*, 741 A.2d 186 (Pa. 1999) (*Dale and Dale*), and *Middletown Township v. Alverno Valley Farms*, 524 A.2d 1039 (Pa. Cmwlth. 1987), did not support Mid-Atlantic's asserted exceptions under the LTEA. *National Biscuit*, the THO concluded, held that not all State licensing or registration fees are true licensing fees that support a preemption or tax exception claim. Relying on the factors used by the Supreme Court in *National Biscuit*, such as the amount of the asserted fee, the nature of the fee, and the fee's purpose, the THO concluded that the HICPA registration fee is not a true license fee. As for the exception for construction and improvement to residential dwellings, the THO noted that both the Supreme Court, and this Court, rejected similar arguments in *Dale and Dale* and *Alverno*

6

*Valley Farms*, respectively.  The THO observed that the Supreme Court in *Fish v. Township of Lower Merion*, 128 A.3d 764, 770 (Pa. 2015), recently reiterated that "business privileges and transactions are separate and distinct subjects of taxation" and that the former could be taxed by a municipality under the LTEA.  (Decision at 6 (quoting *Fish*, 128 A.3d at 770).)  These decisions, the THO reasoned, supported Monroeville's assessment of the BPT on Mid-Atlantic.

Mid-Atlantic next argued that "[i]n addition to violating the HICPA, Monroeville's business registration, licensing and taxation regime violates the Uniformity Clause of the Pennsylvania Constitution" "and the Equal Protection Clause of the United States Constitution . . . by resulting in the unequal treatment of a whole class of taxpayers, home improvement contractors."  (Tax Appeal at 4, R.R. at 65a.)  Reviewing Mid-Atlantic's argument, the THO found that Mid-Atlantic "offer[ed] no specifics on precisely how these constitutional infirmities arise, only stating their existence in conclusory fashion," nor did it provide a "specific explanation to support it[s] assertion that [Monroeville's] business registration, licensing and taxation scheme is unconstitutional."  (Decision at 6-7.)  Absent the averment of such facts, the THO held that Mid-Atlantic had not sustained its burden of establishing that Monroeville's assessment of the BPT "clearly, palpably and plainly violate[d] the Constitution."  (Decision at 7 (citing *City of Allentown v. MSG Assocs., Inc.*, 747 A.2d 1275 (Pa. Cmwlth. 2000); *D/K Beauty Supply, Inc. v. N. Huntingdon Twp.*, 446 A.2d 986 (Pa. Cmwlth. 1982)).)

For these reasons, the THO denied Mid-Atlantic's Tax Appeal.  (Decision at 7-8.)

*D. Mid-Atlantic's Appeal to Common Pleas*

Mid-Atlantic appealed to common pleas, which affirmed the THO's Decision. After filing an appeal with this Court, Mid-Atlantic filed, at common pleas' direction, a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). After reviewing the Statement, common pleas issued its 1925(a) Opinion, in which it held that the THO's findings were supported by substantial evidence, all local procedures were followed, and the THO did not err or violate the Constitutions by denying the Tax Appeal. Common pleas, therefore, adopted as its own the THO's findings, conclusions, and analysis for denying the Tax Appeal. Mid-Atlantic now appeals to this Court, reiterating many of the same arguments.[8]

## II. Mid-Atlantic's Appeal to this Court
### *A. Section 12 of HICPA*

Mid-Atlantic first argues, as a matter of first impression, that Section 12 of HICPA "prohibits Monroeville from imposing **any** registration or licensing requirements on Mid-Atlantic." (Mid-Atlantic's Brief (Br.) at 9 (emphasis added).) This prohibition, Mid-Atlantic argues, extends to the assessment of the BPT because, under the BPT Regulations, the payment of the BPT is inseparable from a business's obligation to register with and obtain a license from Monroeville. Because it cannot be required to register and obtain a license from Monroeville under HICPA, Mid-Atlantic maintains it cannot be subject to the BPT. Further, Mid-Atlantic argues

---

[8] "In reviewing [common pleas'] decision in a tax assessment appeal, we will reverse that decision only if [common pleas] committed an abuse of discretion, [or] an error of law, or where its decision is unsupported by the evidence." *Douglass Vill. Residents Grp. v. Berks Cty. Bd. of Assessment Appeals*, 84 A.3d 407, 408 n.3 (Pa. Cmwlth. 2014).

8

common pleas erred by finding that the BPT was enforceable against it as a "permitted" "outer bounds" under *City of Philadelphia*, 715 A.2d at 398.

Tax Office acknowledges that local taxation cannot intrude into preempted areas, but argues that the legislature is not presumed to have preempted an entire area simply by legislating therein. Rather, the legislature must show an intent to preempt that field and, contrary to Mid-Atlantic's assertions, neither HICPA generally, nor Section 12 particularly, reflect an intent to preempt the assessment of local taxes on home improvement contractors. Instead, the scope of Section 12's preemption, Tax Office argues, is clear on its face and is aimed at registering home improvement contractors for the purposes of regulating their operational conduct. According to Tax Office, the purpose of the "informational registration" that Monroeville requires **all business entities** operating within its boundaries to undergo is to obtain the information necessary for it to exercise its taxing power, not to control the operational activities of those businesses.[9]

The doctrine of preemption "provides, generally, that when the legislature has preempted a field the state has retained all regulatory and legislative power for itself and therefore prohibits local legislation in that area." *Nutter v. Dougherty*, 938 A.2d 401, 406 (Pa. 2007) (internal quotation marks omitted). Preemption "is the exception, not the rule," and "[p]reemption does not result simply because the General Assembly legislates in the field; rather, the legislature must manifest its intent entirely to preempt that field." *Id.* Thus, "absent a pervasive regulation of **every aspect of an industry or profession**, the preemption doctrine does not apply."

---

[9] Alternatively, Tax Office argues that, even if the registration requirements were preempted as to home improvement contractors, such provisions are severable from the tax provisions pursuant to Section 11(C) of the BPT Ordinance. However, because of our disposition, we need not discuss Tax Office's alternative argument.

*Rose View Manor, Inc. v. City of Williamsport*, 630 A.2d 474, 477 (Pa. Cmwlth. 1993) (emphasis added). On the issue of preemption and the assessment of local taxes, the Supreme Court has explained:

> There is generally no difficulty of application where a statute explicitly removes a given subject from local control. Similarly, where some local regulation is permitted its outer bounds can usually be clearly determined; municipal ordinances are valid if they are not contradictory to or inconsistent with the statutory law. In such situations any questions are readily resolved because, almost by definition, the intention of the General Assembly is plain. Difficulties arise only when the legislative intent is not explicit but must be inferred.
>
> [In] *Western Pennsylvania Restaurant Association v. Pittsburgh*, [77 A.2d 616, 619-20 (Pa. 1951), the Supreme Court] offered the following analytical outline:
>
> > the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard . . . . [I]f the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid.

*City of Philadelphia*, 715 A.2d at 398 (last alteration in the original). In local tax preemption cases, this Court has cautioned that "courts should be hesitant to expand the preemption doctrine and declare industries off limits to local taxation because such a declaration further erodes the tax base of local taxing bodies forcing those entities to increase the tax burden on other taxpayers." *Rose View Manor*, 630 A.2d at 477.

Absent from HICPA is any **explicit** language addressing the subject of the taxation, let alone completely removing that subject from the authority of local

10

municipalities. Therefore, this is not a matter of express preemption. *See id.*at 478 (noting that because the asserted state laws were "silent on the issue of taxation" they "contain[ed] no express prohibition or permission"). Because there is no express preemption, we must determine whether, in enacting Section 12, the legislature had the probable intention of prohibiting the assessment of BPTs against home improvement contractors that operate a business within a political subdivision that collects a business's tax information via a registration or licensing process.

HICPA was enacted in 2008 with the purpose of protecting consumers from a variety of fraudulent and deceptive practices by home improvement contractors. To meet that purpose, HICPA requires home improvement businesses wishing to conduct home improvement activities on private residences in Pennsylvania to register with the Bureau of Consumer Protection (Bureau), which maintains a database of registered contractors. Section 3 of HICPA, 73 P.S. § 517.3. HICPA further governs the contents of home improvement contracts and how those contracts can be enforced, creates the offense of "[h]ome improvement fraud" and directs who may prosecute that offense, sets forth what acts are prohibited under HICPA,[10] and provides that a violation of HICPA is a violation of the Unfair Trade Practices and Consumer Protection Law.[11] Sections 7-10 of HICPA, 73 P.S. §§ 517.7-517.10.

Section 12 prohibits political subdivisions from registering, licensing, or charging a fee on any "home improvement contractor" registered under HICPA. 73 P.S. § 517.12. This is consistent with the general tenor of HICPA, which focuses on

---

[10] Prohibited acts include: failing to register with the Bureau; failing to issue refunds under the enumerated circumstances; abandoning or failing to perform under a home improvement contract; deviating from the plans or specifications without a signed change order; advertising to perform home improvements if the person does not intend to do so; or demanding or receiving payment before a contract is signed. Section 9 of HICPA, 73 P.S. § 517.9.

[11] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1—201-9.3.

consumer protection, the creation of a centralized database of registered home improvement contractors to be used by consumers for informational purposes, and the punishment of contractors that engage in fraudulent or prohibited acts. To register under HICPA, contractors are required to provide the Bureau with certain information regarding their business, such as contact information, the names and addresses of each principal, the names and addresses of any prior home contractor businesses operated, and the names of any business registered or licensed in other jurisdictions. Sections 3 and 4 of HICPA, 73 P.S. §§ 517.3, 517.4. By prohibiting the imposition of additional registration, licensing, or fees by political subdivisions, consumers are not forced to go to multiple sources for information and contractors are not burdened by multiple and/or differing registration requirements and fees.[12] As the emphases of HICPA are on ensuring that the relationship between the consumer and home improvement contractor is fair and protecting consumers from fraud, among other problems, it cannot be said to "pervasive[ly] regulate[] . . . **every aspect of [the home improvement contractor] industry or profession**." *Rose View Manor*, 630 A.2d at 477 (emphasis added). Accordingly, Section 12 relates to the local registration or licensing of a "home improvement contractor" for the purpose of regulating the home improvement activities the contractor may conduct within the political subdivision for consumer protection purposes.

The "registration" and "licensing" provisions complained of here are not prompted by Mid-Atlantic's status as "a home improvement contractor," but by Mid-Atlantic's operation of a business in Monroeville. **All** businesses operating in

---

[12] Section 12 thereby addressed a concern, expressed prior to HICPA's passage, about the number of municipalities with which home improvement contractors had to register. H. 192nd Sess., Oct. 8, 2008, at 2292-93, available at https://www.legis.state.pa.us/WU01/LI/HJ/2008/0/20081008.pdf (last visited Feb. 13, 2019).

Monroeville are required to register with and obtain a business license from the Tax Collector, (Section 5 of the BPT Ordinance, R.R. at 98a), and Monroeville is treating Mid-Atlantic as it would any other business operating within its boundaries. Unlike HICPA's registration, which requires a significant amount of information about the home improvement contractor, its principals, and its business history, *see* 73 P.S. §§ 517.3-517.4, Monroeville's registration requires only a business's name, address, business address, tax identification number, and a description of the type of business in which it is engaged, (Section 5 of the BPT Ordinance, R.R. at 98a). Permitting Monroeville to require Mid-Atlantic, **the business**, to register and obtain a license so that Monroeville may assess the BPT, is not inconsistent or in conflict with Section 12's prohibition against Monroeville requiring Mid-Atlantic, **the home improvement contractor**, to register and obtain a license in order for Mid-Atlantic to perform those construction activities within Monroeville. As such, Monroeville's registration and licensing requirements fall within the "permitted" "outer bounds" of local registration of home improvement contractors. *City of Philadelphia*, 715 A.2d at 398. Accordingly, we do not read Section 12 as evidencing a probable intention by the legislature to prohibit the **general** business registration or licensing of a home improvement contractor by a political subdivision for the sole purpose of allowing the exercise of its taxing authority under the LTEA.

This conclusion is consistent with our Supreme Court's decision in *National Biscuit.* Relevant to this issue, our Supreme Court explained in *National Biscuit* that the $3.00 mercantile license fee businesses operating in the City of Philadelphia (City) had to pay to obtain a mercantile license, which was used for the purpose of

13

assessing the City's equivalent of a BPT,[13] was **not** a **license** fee. 98 A.2d at 189. Instead, it was "a mere registration charge designed to inform the [C]ity of the identity of those liable for the payment of the tax." *Id.* at 189 n.4. In essence, the fee was charged to cover the clerical expenses of registration and issuing the mercantile license certificate. *Id.* at 189. Similar to the situation in *National Biscuit*, all businesses operating in Monroeville must register with the Tax Collector and pay a yearly $25.00 fee to obtain a business license. (R.R. at 113a.) This business license is used "to inform [Monroeville] of the identity of those liable for the payment of the tax" and the fee to cover the costs associated with registration. *National Biscuit*, 98 A.2d at 189 n.4. Monroeville's collection of this information and a registration fee for tax purposes is not inconsistent or in conflict with Section 12 and, therefore, is not preempted by that provision.

It is also consistent with this Court's limited application of the preemption doctrine in local tax cases. This Court has found few areas that have been so pervasively regulated as to reflect the legislature's intent to preempt any local taxation, which include harness racing and liquor. *Rose View Manor*, 630 A.2d at 477. Other areas found not to be subject to such pervasive regulation include: the licensing and regulation of the nursing home industry under the Pennsylvania Health Care Facilities Act[14] and the Department of Health's corresponding regulations, *Rose View Manor*, 630 A.2d at 477-78; the licensing and professional regulation of lawyers by the Supreme Court, *Rieders, Travis, Mussina, Humphrey & Harris v.*

---

[13] The issues in *National Biscuit* involved whether the mercantile license tax, assessed against all qualifying businesses operating within the City for the privilege of those operations and calculated on the businesses' gross receipts, was preempted by various state taxes or licensing fees. 98 A.2d at 184-85.

[14] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101–448.904b.

14

*City of Williamsport*, 578 A.2d 618, 619-20 (Pa. Cmwlth. 1990); and the licensing and professional regulation of real estate agents under the Real Estate Licensing and Registration Act,[15] *Helsel, Inc. v. City of Harrisburg*, 564 A.2d 546, 547 (Pa. Cmwlth. 1989). The regulation of the relationship between consumers and home improvement contractors under HICPA is no more pervasive than these other areas and, therefore, we apply the holdings of *Rose View Manor*, *Rieders*, and *Helsel* to conclude that Section 12 of HICPA does not preempt the assessment of the BPT here.

### B. Section 301.1(f) of the LTEA

Mid-Atlantic next asserts that Monroeville is precluded by Subsections 301.1(f)(1) and 301.1(f)(11) from assessing the BPT against it. As a preliminary issue, we note Mid-Atlantic characterizes these provisions as exceptions and, therefore, as having to be strictly construed against the taxing authority. *Lynnebrook & Woodbrook Assocs., L.P. v. Borough of Millersville*, 963 A.2d 1261, 1265-66 (Pa. 2008). In contrast, Tax Office characterizes these provisions as exemptions, which would be interpreted against the taxpayer. Our Supreme Court has recognized that the exclusions set forth in Section 301.1(f) are exceptions, and, therefore, those provisions must be strictly construed against the taxing authority. *Fish*, 128 A.3d at 766, 769; *Lynnebrook*, 963 A.2d at 1266.

### 1. Subsection 301.1(f)(1)

Mid-Atlantic maintains that it is subject to a "State tax or license fee" on its construction business because it pays licensing fees to the Bureau pursuant to HICPA and, therefore, Monroeville cannot "assess and collect . . . any tax . . . on

---

[15] Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101–455.902.

15

[its] privilege . . . [or] occupation." 53 P.S. § 6924.301.1(f)(1). These fees, according to Mid-Atlantic, cover administrative costs but also "raise revenue to enforce the provisions of [HICPA] and to provide for consumer education and other programs." (Mid-Atlantic's Br. at 12 (citing Section 5(b) of HICPA, 73 P.S. § 517.5(b)).) It further maintains that HICPA's scope and regulation of home improvement contractors is broad and encompassing, and its specific language preempting local registration and licensing reflects the legislature's intent that the only regulation of home improvement contractors should be by the state. Thus, it asserts, the HICPA fee it pays is a true licensing fee that, pursuant to *National Biscuit*, preempts the imposition of local taxes on its business, and common pleas erred in holding otherwise.

Tax Office argues that the fee Mid-Atlantic pays pursuant to Section 5 of HICPA, 73 P.S. § 517.5, is not a true licensing fee that would preclude Monroeville from assessing the BPT against Mid-Atlantic under Subsection 301.1(f)(1). Tax Office maintains that *National Biscuit* does not support Mid-Atlantic's arguments, but the determination of the THO and common pleas that Subsection 301.1(f)(1) does not apply here. It notes that the HICPA fee, even if paid by large numbers of home improvement contractors, is insufficient to finance the total regulation of the home improvement industry. The HICPA fee, Tax Office argues, is like the fee paid by realtors to their state regulators, which has been found not to preclude the imposition of the BPT under Subsection 301.1(f)(1). *Helsel*, 564 A.2d at 547.

Subsection 301.1(f)(1) provides that "local authorities shall not have authority by virtue of this act" "[t]o levy, assess and collect or provide for the levying, assessment and collection of any tax on . . . a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a

16

State tax or license fee." 53 P.S. § 6924.301.1(f)(1). In considering whether a local BPT violates this provision, our Courts have applied two tests: (1) the true licensing fee test; and (2) the duplicative tax test. *Rose View Manor*, 630 A.2d at 475-76.

Under the true licensing fee test, we review "whether a charge exacted by the Commonwealth and designated as a license fee is really a 'true license fee,'" the distinguishing features of which

> are (1) that it is applicable only to a type of business or occupation which is subject to supervision and regulation by a licensing authority under its police power; (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation conducted by it. If, therefore, even though the charge be labeled a "license fee," it cannot be regarded as such if, being merely nominal in amount and not apparently equated to the probable cost of supervision and regulation of the licensee's activities, it presumably was not legislatively intended to provide for such a cost; in such a case it must be considered as merely a registration charge intended to cover clerical costs of the issuance of the license certificate and general office expenses, and in that event it does not, of course, prevent municipal taxation . . . .

*Id.* at 475 (quoting *National Biscuit*, 98 A.2d at 188). In determining whether a fee is a true licensing fee, rather than a registration charge covering clerical costs, the Supreme Court looked to, among other factors, the amount of the fee, whether that fee was a flat fee or a graduated fee based on the volume of business in which the purported licensee engaged, and whether the charged fee was likely to cover the level of regulation imposed by the statute. *National Biscuit*, 98 A.2d at 188-90.

The duplicative tax test involves "determin[ing] whether a local tax duplicates a Commonwealth tax," or license fee and, to do so, "the incidence of each tax must be examined to determine if the subject matter embraced by each tax and the tax base to which each is applied is duplicative." *Rose View Manor*, 630 A.2d at 476. "If the Commonwealth and local taxes are applied to different subject matter and to a different tax base there is no duplication." *Id.* We applied this test in *Helsel* to determine whether the City of Harrisburg could impose a BPT against a real estate agent who argued that the biannual license fee the agent paid to the Commonwealth precluded the imposition of local taxes. 564 A.2d at 546, 548. In comparing the state licensing fee and the local tax, we held that "it [was] readily apparent that the nature of the taxes are so different that they are not duplicative." *Id.* at 548. We likewise applied it in *Rose View Manor* and came to the same conclusion after reviewing the licensing fee a nursing home paid to the Commonwealth and the BPT the nursing home was challenging. 630 A.2d at 477.

The THO and common pleas applied the true licensing fee test, and the parties agree that the true licensing fee test applies to this appeal. While the true licensing fee test and duplicative tax test "are different, they are not inapposite," *id.* at 476, and the application of either test in this matter results in the same outcome. The HICPA fee charged to register home improvement contractors is more akin to a registration fee, rather than a true license fee as defined in *National Biscuit*, and the BPT is not duplicative of the HICPA fee because the incidences of taxation are different.

Initially, we note that HICPA does not designate the fee paid by home improvement contractors subject to its provisions a "license fee." HICPA's statutory language speaks in terms of the "registration," not licensing, of home improvement

18

contractors. *See, e.g.*, Sections 2, 3, 4, and 6 of HICPA, 73 P.S §§ 517.2 (defining "Certificate" as "[a] certificate of registration"), 517.3 ("Registration of contractors"), 517.4 ("Procedures for registration as a contractor"), 517.6 ("Proof of Registration"). This is consistent with a frequent theme that arose during the debate on HICPA: that HICPA was about registering, not licensing, home improvement contractors. H. 192nd Sess. (House Legislative Journal), Oct. 7, 2008, at 2196, 2198; House Legislative Journal, Oct. 8, 2008, at 2293.[16] However, we will not rely solely on the nomenclature of the HICPA fee to decide whether it is a true licensing fee.

The **initial** HICPA application fee is $50.00 and the subsequent **renewal fees are $50.00 biennially**, which makes this fee the equivalent of a **$25.00 yearly fee**. Section 5(a) of HICPA, 73 P.S. § 517.5(a). This fee is regardless of the size of the home improvement contractor, the volume of that contractor's business, the amount of advertising in which it engages, or the number of consumer contracts into which it enters. A true licensing fee is intended to cover "the probable cost of supervision and regulation of the licensee's activities," *National Biscuit*, 98 A.2d at 188, and it is unlikely that the legislature could have intended that this small, flat fee was responsible for covering the costs associated with regulating and enforcing HICPA's provisions. This is borne out by Section 5(b) of HICPA, which provides that this fee, **along with the penalties collected**, are deposited into a "Home Improvement Account," the funds of which may be used for enforcement and educational purposes. 73 P.S. § 517.5(b). Our Supreme Court has explained that "[a] license fee cannot be conjured up merely by aggregating a number of registration fees," but is based on "the unit fee imposed" because as the number of licenses increases, the

___

[16] Available at https://www.legis.state.pa.us/WU01/LI/HJ/2008/0/20081007.pdf and https://www.legis .state.pa.us/WU01/LI/HJ/2008/0/20081008.pdf (last visited Feb. 13, 2019).

amount of regulation likewise grows. *National Biscuit*, 98 A.2d at 190 (internal quotation marks omitted). Given the small amount of the HICPA fee imposed per home improvement contractor, we conclude it is not a true licensing fee, but a registration fee meant more to cover the clerical costs of registering and issuing the HICPA certificate than the costs of enforcing HICPA's provisions. *See, e.g.*, *id.* at 189-90 (considering the amount of a number of state fees to determine whether those fees were true licensing fees or registration fees to cover clerical expenses); *Rose View Manor*, 630 A.2d at 477 (observing that "[t]he annual renewal fee of $200.00 plus $2.00 per in-patient bed that the Commonwealth charges Rose View is more akin to a registration fee than a true license fee as defined").

Further, comparing the HICPA fee and the BPT here and applying the "duplicative tax test," we come to the same conclusion as we did in *Rose View Manor* and *Helsel*. As in those cases, "[t]he tax paid to [Monroeville] is a tax on gross receipts while the [HICPA fee] paid to the Commonwealth is . . . not dependent on the amount of gross receipts. [Monroeville's] tax is placed on all businesses[,] while the [HICPA] fee is directed only towards" certain home improvement contractors. *Helsel*, 564 A.2d at 548; *see also Rose View Manor*, 630 A.2d at 476-77.

Accordingly, because the HICPA fee is not a true licensing fee under *National Biscuit* and that fee and the BPT "are not duplicative under the LTEA," *Helsel*, 564 A.2d at 548, Monroeville is not precluded by Subsection 301.1(f)(1) from assessing the BPT against Mid-Atlantic.

## 2. Subsection 301.1(f)(11)

20

Mid-Atlantic also contends the exception set forth in Subsection 301.1(f)(11), related to the authority to "assess or collect a tax on the construction of or improvement to residential dwellings," applies here because it is engaged in that type of business. 53 P.S. § 6924.301.1(f)(11). It argues the cases relied upon by common pleas to find this provision inapplicable are distinguishable because *Dale and Dale* and *Alverno Valley Farms* were decided before HICPA's enactment, and *Fish*, which was decided "only by the narrowest of margins and over a strong dissent," did not involve a business in the home improvement industry. (Mid-Atlantic's Br. at 12.)

Tax Office responds that Mid-Atlantic's proposed interpretation of Subsection 301.1(f)(11) was rejected in both *Dale and Dale* and *Alverno Valley Farms*, and Mid-Atlantic's attempts to distinguish those cases are unavailing. It is well-settled, Tax Office argues, that there is a distinction between the taxation of the services a business may provide to its customers and the taxation of that business for the privilege of operating within a municipality. *Fish*, 128 A.3d at 770; *Gilberti v. City of Pittsburgh*, 511 A.2d 1321, 1324 (Pa. 1986). According to Tax Office, the BPT is not a tax on home improvement contractors' construction or renovation services, but on the privilege of their conducting business operations in Monroeville. The distinction between taxing the services a business entity provides and taxing the privilege of operating a business within a municipality was reiterated, Tax Office maintains, by a majority of the Supreme Court in *Fish*, notwithstanding a strong dissent.

Subsection 301.1(f)(11) provides that "local authorities shall not have authority by virtue of this act" "[t]o levy, assess or collect a tax on the construction of or improvement to residential dwellings . . . ." 53 P.S. § 6924.301.1(f)(11). In

21

*Alverno Valley Farms*, a contractor challenged a township's assessment of the BPT based on the contractor's gross receipts because, it argued, those gross receipts were earned through its construction activities. 524 A.2d at 1040. Thus, it asserted, the BPT was the equivalent of taxing the construction of residential dwellings and, therefore, fell within this exception to the township's taxing authority. After observing that the legislature had not demonstrated an intent to control the entire building industry via comprehensive legislation and that the challenged tax would be valid so long as it did not duplicate another tax, we rejected the contractor's argument. In doing so, we explained:

> [t]he local tax in this case does not tax the same subject matter as specified in section 2(11) of the Act,[17] nor is it measured by the same base. The local tax is a tax on the privilege to do business and it is measured by the gross volume, determined by receipts, of business conducted by the taxpayer, whereas the prohibition under section 2(11) of the Act addresses taxes on the construction of a residence, and thus has no relationship to the volume of business conducted. The impact of the two taxes is on a totally different basis. Carrying on a construction business, such as that in which appellee is engaged, involves much more than the construction of a residence. Section 2(11) of the Act therefore does not prohibit the local tax which was enacted pursuant to [the local o]rdinance.

*Id.* at 1040-41 (emphasis omitted). In *Dale and Dale*, the Supreme Court, citing *Alverno Valley Farms*, held that the assessment of the BPT based on the gross receipts of a contractor was "not a tax upon the construction of a residential dwelling or the issuance of a building permit, which is prohibited." *Dale and Dale*, 741 A.2d at 189. The Supreme Court, in *Fish*, explained it "is established law in Pennsylvania that business privileges and transactions are separate and distinct subjects of

---

[17] *Alverno Valley Farms* cited Section 2(11) of the LTEA, *formerly* 53 P.S. § 6902(11), which was renumbered as Section 301.1(f)(11) by Section 4 of the Act of July 2, 2008, P.L. 197.

22

taxation," and cited *Dale and Dale* as reflecting this distinction. *Fish*, 128 A.3d at 770.

*Dale and Dale* and *Alverno Valley Farms* are directly on point and, as Tax Office argues, rejected the argument made by Mid-Atlantic in this matter. Although Mid-Atlantic maintains these cases are distinguishable because they occurred prior to HICPA's enactment, we are not persuaded. HICPA addresses consumer protection, not the permissible subjects of local taxation under the LTEA. Thus, its enactment does not limit the Court's interpretation of what subject may and may not be taxed under the LTEA. And, under the LTEA and the decisions of our courts, the taxation of a construction company's gross receipts for the privilege of its operating a business is separate and distinct from a tax on the construction services that company may provide. While a local taxing authority is precluded from taxing the latter under Subsection 301.1(f)(11), it is well-settled that the former is permissible. As the BPT assessed here is based on a business's gross receipts and is for the privilege of operating a business in Monroeville, Subsection 301.1(f)(11) is inapplicable here.

*C. Uniformity Clause and Equal Protection Clause.*

Mid-Atlantic next argues it met its burden of proving that Monroeville's taxing scheme is constitutionally infirm because that scheme, as applied to Mid-Atlantic, has been invalidated by HICPA and the LTEA. According to Mid-Atlantic, Monroeville's continued attempts to impose the invalidated BPT against it reflect an unreasonable classification of Mid-Atlantic for the purposes of taxation. Tax Office responds that Mid-Atlantic has not specified how the alleged constitutional infirmities arise. Therefore, Tax Office argues, Mid-Atlantic has not met its heavy

burden of showing that the BPT clearly, palpably, and plainly violates the Constitutions by creating an unreasonable classification for taxation.

Where a taxpayer attacks "the constitutionality of a tax, the burden is on the taxpayer to show that the tax clearly, palpably and plainly violates the Constitution by demonstrating that a classification for purposes of taxation is unreasonable." *MSG Assocs.*, 747 A.2d at 1278. The taxpayer's burden of proof is a heavy one because "there is a presumption that the tax is constitutional." *Id.* A review of Mid-Atlantic's constitutional arguments reveals that they are premised on this Court finding that Monroeville's BPT taxing scheme was invalid under HICPA and/or the LTEA. Having not invalidated the assessment of the BPT against Mid-Atlantic under HICPA or the LTEA, this cannot be the basis of a successful constitutional claim. And, as Mid-Atlantic presents no other explanation or argument for how the BPT "clearly, palpably and plainly violates the Constitution," *id.*, Mid-Atlantic has not met its heavy burden of demonstrating a constitutional violation.

### D. Abatement

Mid-Atlantic finally asserts that, if it prevails on its arguments on the merits, the assessed penalties and interests would be obviated but, to the extent any penalties, interests, or costs remain, those amounts should be abated in full. Citing Section 508.B of the BPT Regulations, Mid-Atlantic maintains that Monroeville is required to abate any penalty or interest that can be attributed to "erroneous advice furnished to the taxpayer in writing" that is reasonably relied upon by the taxpayer. (Mid-Atlantic's Br. at 17.) Mid-Atlantic argues that the BPT Regulations and representations by the Tax Office that Mid-Atlantic had to register and obtain a license, contrary to HICPA, is such "erroneous advice." (*Id.*) Tax Office argues that, because Mid-Atlantic cannot prevail on the merits of its substantive arguments

24

and the Revised Notices properly reflected the BPT Mid-Atlantic owed to Monroeville, Mid-Atlantic is not entitled to any abatement under Section 508.B of the BPT Regulations.

Because we have found that the BPT is not invalid under HICPA, the LTEA, or the United States or Pennsylvania Constitutions, Mid-Atlantic has not established an entitlement to an abatement on the basis that it has prevailed on the merits of its Tax Appeal. Moreover, we are not persuaded by Mid-Atlantic's argument that it received "erroneous advice," upon which it reasonably relied that resulted in its underpaying the BPT. Section 508.B of the BPT Regulations provides

> Monroeville shall abate any portion of any penalty or interest attributable to erroneous advice furnished to the taxpayer in writing by an officer, employee or agent of . . . Monroeville, acting in their official capacity . . . if:
>
> (1) The written advice was reasonably relied upon by the taxpayer and was in response to a specific written request of the taxpayer; and
>
> (2) The portion of the additional tax, penalty and interest did not result from the failure of the taxpayer to provide adequate or accurate information.

(R.R. at 156a (emphasis in original).) As discussed above, the **general business** registration and licensing process set forth in the BPT Ordinance and BPT Regulations is not preempted by Section 12 of HICPA, and, there is nothing otherwise invalid about the assessment of the BPT. Therefore, it was not "erroneous advice" to require Mid-Atlantic to register and obtain a business license for the limited purpose of ascertaining tax liability in accordance with those provisions. *Id.* Thus, abatement pursuant to Section 508.B of the Regulations is unavailable to Mid-Atlantic.

25

### III. Conclusion

For the foregoing reasons, Monroeville is not preempted by Section 12 of HICPA or precluded by Subsections 301.1(f)(1) or (11) of the LTEA from assessing the BPT against Mid-Atlantic. Further, Mid-Atlantic has not met its burden of proof on its constitutional claims and has not established any entitlement to an abatement of the penalties, interests, or costs imposed by the THO. Accordingly, common pleas' Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mid-Atlantic Systems of WPA, Inc., :
      Appellant :
         :
    v.     : No. 588 C.D. 2018
         :
The Tax Office of the Municipality :
of Monroeville     :

# **O R D E R**

  **NOW**, March 4, 2019, the Order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

           _____
           **RENÉE COHN JUBELIRER,** Judge